(No. 18969.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MELVIN FUDGE, Plaintiff in Error.

*Opinion filed February 18, 1931.*

Farmer, J., dissenting.

Leslie J. Taylor, Guy L. Smith, and C. E. Flesher, for plaintiff in error.

Oscar E. Carlstrom, Attorney General, Carl H. Preihs, State's Attorney, and Roy D. Johnson, for the People.

Per Curiam: Plaintiff in error was indicted at the August, 1927, term of the circuit court of Christian county for the crime of perjury. The indictment charged that on the 9th of September, 1925, Fudge, plaintiff in error, appeared as a witness before the grand jury of the August, 1925, term of the circuit court of that county in regular session and regularly qualified; that one Walter A. Amling was appointed foreman and was so sworn, and that on September 9, while in regular session, Fudge was duly sworn by the foreman that the evidence which he, the said Fudge, would give to the grand jurors and so sworn, touching the matter then under consideration, should be the truth, the whole truth and nothing but the truth; that there was then and there before said grand jury a material question whether one James Corman did on the 10th day of June, 1925, and on the 15th day of June, 1925, within the county of Christian, sell to said Fudge and to one Elmer Nave two

pints of "mule whisky," being intoxicating liquor, for beverage purposes; that the said Fudge, being so sworn, contriving and intending to prevent due course of law and justice and to mislead the grand jurors and to subject said Corman to be unjustly indicted, then and there, "upon his oath aforesaid, falsely, willfully, corruptly, knowingly and maliciously to the said grand jurors so sworn as aforesaid did depose and swear in substance and in effect to the following, that is to say, that one James Corman did unlawfully and knowingly sell intoxicating liquor for beverage purposes to him, the said Melvin Fudge, at and within the county of Christian and State of Illinois, on the 10th day of June, 1925, and again on the 15th day of June, 1925, and that the mule whisky was intoxicating liquor, and sold to him, the said Melvin Fudge, while in the presence of one Elmer Nave, for beverage purposes." The indictment then charges that in truth and in fact the said Corman did not then and there, in the presence of Nave, sell to Fudge one pint of mule whisky for beverage purposes, and did not on the 15th day of June sell one pint of mule whisky, being intoxicating liquor, for beverage purposes; all of which testimony Fudge then and there knew to be false and corrupt, and that all of said testimony was then and there material to the issue in question and to the investigation by the grand jury in investigating the charges against said Corman.

The case was set for hearing at the November term of court following. Motion for continuance on account of absent witnesses was filed on the 30th of November, setting forth that two material witnesses, Walter McKeown and John Harper, could not be secured for attendance at the trial. This motion was denied. The defendant interposed a challenge to the array of jurors, setting forth the following grounds: "That the jury is not taken from a list of the jurors from the county of Christian in the manner and form as provided by law; that the names of said jurors

were not placed in the jury box in the manner and form as required by law; that the competent jurors drawn from the jury box from time to time and at various terms of court have been excused from service for the periods for which they were drawn and summoned to said court and that the names of said jurors had not been returned to the county clerk by the clerks of the various courts of record in Christian county and their names placed on slips and returned to the jury box, as required by statute; that the jury list of Christian county and selection of the jury therefrom, including the jury now impaneled, have not been chosen and selected as provided in sections 1, 2 and 5 of chapter 78 of the laws of the State of Illinois; that the array of jurors is otherwise improperly selected; all of which matters and things this defendant offers to show to the court by the introduction of witnesses and records ready to be produced upon the hearing of this motion." The State filed a motion to strike the challenge to the array from the files, which motion was allowed. The grounds for its allowance do not appear in the record. The defendant thereupon moved for leave to amend his challenge to the array, which motion was denied. Defendant was thereupon arraigned and furnished a list of the jurors and the case proceeded to trial.

The State, to prove the charge of perjury, offered the testimony of James Corman, who testified that he did not sell Fudge any intoxicating liquors on either June 10 or June 15, 1925, or at any other time. The People also called Walter Amling, the foreman of the grand jury, who testified that at the time Fudge was before the grand jury a matter as to the violation of the Prohibition law was being considered; that Fudge testified with reference to buying liquor; that he testified that he bought a bottle of "booze" from Corman on two different occasions; that he testified that the 10th of June he drove with some milk or cream to Pana and stopped at Corman's filling station and asked

him if he knew where he could get a bottle of booze and that Corman gave him a bottle of booze, and that on the 15th of June Corman gave him another bottle of booze; that he went into the station and gave Corman a five-dollar bill and that Corman gave him back some change; that at the time this statement was made the grand jury was assembled in the court room. Amling also testified that when Fudge came in before the grand jury "I swore him in." He testified on cross-examination that he, also, was a witness before the grand jury in that matter; that Fudge was in the room a half hour or an hour; that the witness examined him; that the State's attorney was present but did not examine him; that the State's attorney was taking down the statements on the typewriter; that he did not remember any other witnesses that appeared before the grand jury on that day. He further stated that he had told all he could about Fudge's statements made in the grand jury room; that they asked Fudge about the Corman matter because that was what he came up for. The witness testified that he was an intimate friend of Corman's and had been active in the perjury case against Fudge. He testified that the feeling was running pretty high at that time and he was watching this case pretty carefully; that it was a case of importance. He testified that he did not remember that twenty-three other cases had been testified to before the grand jury by Fudge; that he might have testified to a couple more cases; that Fudge had some exhibits in the grand jury room—a few bottles of booze—but witness did not know how many; there might have been five; that he never talked about it from the time Fudge testified until the time of the witness' testimony and had never repeated his testimony. The only other testimony offered by the State concerning the charge was the alleged confession of Fudge that he had been engaged by the then sheriff of Christian county to procure purchases of intoxicating liquors, and that he had reported to the sheriff that he pur-

chased two pints of liquor from Corman, when, as a matter of fact, he had not done so. Objection was made to the admission of this confession on the ground that it was not voluntary but was made because of threats and intimidation and on promise of immunity from punishment. Evidence was heard on that matter and the objection was overruled and the confession admitted.

On defense Fudge took the witness stand in chief and testified that while acting as deputy sheriff he had purchased liquor from Corman on the dates of June 10 and June 15, and that on June 23 he accompanied two Federal officers to Corman's filling station, where one of them named McKeown went into the basement of the filling station and brought out a tall glass jug containing a quantity of intoxicating liquor, and that the liquor then procured, as well as that procured by himself and Elmer Nave on the two dates previously mentioned, was tested by a member of the faculty of the Taylorville township high school. He also testified that he appeared before the grand jury, though not on September 9; that the State's attorney was there making a report on a typewriter of what was said; that he testified concerning twenty-three cases of alleged sale of liquor; that no indictments were returned against Corman or the other twenty-two persons concerning whom he testified but that he was indicted by that grand jury for "bootlegging" and that that case against him was never tried; that when he went in to the grand jury the foreman told him to hold up his hand and be sworn to tell the truth, and he did it, and no one told him what cases were under consideration. He stated that he gave bond on the indictment returned against him, and that on the 7th of April, 1927, he was arrested in LaSalle county on the charge of conspiracy, although the indictment against him charging that offense had then been quashed. He testified that instead of being taken to Taylorville, the county seat, he was taken to the office of the State's attorney in Pana, where, after threats

and promises of immunity, he made the statement offered in evidence as a confession. He testified that he asked to be allowed to call an attorney, but he was not allowed to do so. At about 10:30 that evening, after having spent two hours in the office of the State's attorney in Pana and after he had signed and sworn to the statement made out on a typewriter by the State's attorney, he was taken to the county jail in Taylorville, from whence he was at once released on bond. The defense showed by R. L. Webb, member of the faculty of the Taylorville township high school, that the exhibits referred to as bottles of liquor, contained forty-four per cent alcoholic content by volume.

William Frankenstein testified that he was a Federal prohibition agent, with offices in Chicago; that on June 23, 1925, he, in company with the sheriff of Christian county and plaintiff in error, Fudge, Elmer Nave and others, went to Corman's oil station, in Pana; that they explained they were government men and had a search warrant for his place; that Corman was not there when they went in but came in about five to seven minutes later; that McKeown, another Federal prohibition agent, made a search and found on the premises a gallon glass bottle or jug containing more than a quart of liquor. This jug and its contents were put in evidence and the witness Webb testified that the liquor analyzed forty-four per cent alcohol by volume.

It appears from the record that Corman was taken before the United States commissioner at Springfield, where the State's attorney of Christian county also appeared. It also appears from the record that on the statement of said State's attorney that he would prosecute the case and the other cases in Christian county they were remanded to that county. It also discloses, however, that no indictment was thereafter, or at any time, returned against Corman in Christian county for the offense preferred against him by the Federal prohibition agents or any other charge of like character. It appears from the witnesses present at the

time the Federal prohibition agents raided Corman's gasoline station that they were not subpœnaed to appear to testify concerning the matter at any time thereafter.

Elmer Nave also testified for the defense, corroborating the testimony of Fudge concerning the purchase of liquor at Corman's gasoline station on the 10th and 15th of June and concerning the raid made by Federal prohibition officers on June 23. To impeach his testimony the People offered a statement proved to have been signed by him, saying that he and Fudge had not purchased booze at Corman's filling station on June 10 and June 15; that he and Fudge "made it up" to say that they had gotten the liquor at Corman's. He admitted making this contrary statement, but stated as a reason for same that his father and other members of his family had urged him to do so, telling him he would go to the Federal penitentiary if he did not say that Flesher, the sheriff, "framed Corman and that it was all a frame-up between me and Flesher and Fudge." Flesher died prior to the trial.

Counsel for plaintiff in error assign numerous errors on the record, one of which is that the court erred in overruling the challenge to the array. Counsel for the State argue in reply that the motion challenging the array was not supported by affidavit and that no challenge to the array was tendered after arraignment and the furnishing of a list of jurors, and cite decisions of this court holding that where a party enters upon the selection of a jury from the panel presented he waives his right to challenge the array. This is undoubtedly the rule, but the challenge to the array in this case was made after the case was called and prior to the entry upon examination of the jury in *voir dire*. We have frequently ruled that mere irregularities in the selection of the regular panel or the impaneling of a jury do not constitute error requiring reversal of a judgment of conviction where it is not shown that the defendant is prejudiced. (*People* v. *Corder,* 306 Ill. 264; *Henry* v.

*People,* 198 id. 162.) When, however, the substantial provisions of sections 1 and 2 of the statute relating to jurors are violated, and such violations are sufficient, in substance, to amount to a denial of a trial by jury according to the law of the land, it is error to overrule a challenge to the' array. (*People* v. *Lembke,* 320 Ill. 553; *People* v. *Cochran,* 313 id. 508; *People* v. *Boston,* 309 id. 77; *People* v. *Mankus,* 292 id. 435; *Healy* v. *People,* 177 id. 306; *Borrelli* v. *People,* 164 id. 549.) In this case the challenge was stricken from the files and the motion of counsel for plaintiff in error for leave to amend it was denied. The challenge to the array offered to produce evidence in its support. Counsel for the State apparently argue that it should have been stricken because it was not sworn to. We know of no rule requiring that a challenge to the array be supported by an affidavit, although such would not be an improper practice. The requirements were fully met by an offer to make proof of the charges. The charges in the challenge as to the irregularity of the selection of the jury were on their face sufficient to require the court to make inquiry into it. Such proof may be made by oral evidence or by affidavits. (*Borrelli* v. *People, supra.*) We are not apprised by the record as to the manner in which the jury was drawn, as the court struck the challenge and refused to hear evidence concerning the matter. For all that is shown by the record there may have been an utter disregard of the statute, amounting, in effect, to a failure of trial according to law. The challenge was made in apt time, and it was error to strike it and to refuse to hear testimony in support of it.

Counsel also assign as error the ruling of the court in admitting in evidence the alleged confession of Fudge. When objection to this offer was made the court heard testimony concerning the circumstances under which the statement was made. The record shows that Fudge was arrested on a conspiracy charge while working on a farm in

LaSalle county. It also shows that this *capias* was issued on an indictment for conspiracy which had been quashed and the *capias* ordered recalled. There is evidence that one of the officers who went to LaSalle county to return Fudge had with him a warrant charging Fudge with perjury, but there is no evidence from whence it emanated or that he served it on Fudge. Those who went to Ottawa for Fudge were Lon Reed, a deputy sheriff of Christian county, and Grover Fogerty, also a deputy sheriff. He was arrested on the 7th day of April and returned to Christian county on the 8th. Fudge testified that after he had been arrested Reed said to him at Ottawa, "Are you the fellow that bought the mule whisky from Jim Corman?" to which the witness replied in the affirmative, and that Reed called him a liar and said, "You never bought any mule whisky from Jim Corman in your life." Reed denies this, but Fudge's testimony in this regard is corroborated by Leonard Orr, a deputy sheriff of LaSalle county, who testified that he was present and heard that conversation, and also heard Reed say that they were trying to "frame" Corman and that he would get a statement out of Fudge on the way down or after he got there. Instead of taking Fudge to Taylorville, the county seat, he was taken to Pana, which is another city in Christian county not on the direct road from Ottawa to Taylorville, where he was taken to the law offices of Carl Preihs, the State's attorney. Fudge testified that they endeavored to get him to change his testimony on the way from Ottawa to Pana; that when he reached Pana he asked permission to call an attorney, which was denied him; that he was then taken to the law offices of the State's attorney, and that when they reached there they stayed in the hall outside the offices until the State's attorney came; that the latter called Reed and Fogerty into the south room of the offices and shut the door and later called him in there and talked with him alone; that he asked him if he bought booze from Corman; that the witness replied that he did;

that the State's attorney said: "You are a damn liar; you never bought any from him or anybody else; you better come clean about it; you are going to get yourself in a hell of a mess;" that he also said: "You told it at Springfield and at Taylorville before the grand jury; you have no friends down there; you can help yourself out if you will;" and that the State's attorney declared that the sheriff had sent the witness over to Corman's place to "plant the booze." Fudge testified that he denied this, and the State's attorney called him a Klan and a liar and told him if he would own up that he did not get the liquor that he would see that nothing came up against him; that he was the boss. He testified that they were in the office for about forty-five minutes, alone; that the State's attorney talked to him about the penitentiary and said he was going to send the witness there for perjury, and that he got a book and read to the witness what perjury meant. The witness testified that he changed his story because he thought the State's attorney was telling him the truth and that he would not prosecute the case against him and he agreed to make the statement, and that the State's attorney then went into the other room with the others and wrote out the statement on the typewriter and gave it to him to read; that he read it, signed it and swore to it before the police magistrate who was there in the office. The witness also gave a detailed description of this room in which he had stated he held a private consultation with the State's attorney. The accuracy of this description is not disputed nor does it appear that Fudge was at any other time in Preihs' office. Fudge testified on this preliminary hearing that he asked Preihs to let him communicate with his attorney, and that the latter stated: "You don't need an attorney; you don't need any lawyer; you ain't going to call one; you let me alone and I can do you more good than all the lawyers in the county can." There is no denial of the refusal to permit Fudge to call an attorney. Reed, Fogerty and Harold T. Meachum testified

that they were at Preihs' office on the evening when the statement was made; that about nine o'clock Preihs and Fudge and some others went out to find a place where Fudge had stated that he had purchased liquor; that when they returned the statement was made out and Fudge signed it, stating that he had not bought any "mule" from Corman. Reed testified that he did not remember all that was said—did not recall just what was said—and that the only time Preihs and Fudge were out of his presence was when they went out together to find the place where Fudge said he had bought liquor.

Harold T. Meachum testified that he was in the office when Fudge signed the statement; that they were in the room where the typewriter was kept; that Fudge was asked to read the statement over; that he did not hear him say what was on the paper is a bunch of lies; that when he came up the State's attorney and Fudge were in the front room and Preihs was typing the statement. He testified that his business was that of a barber and that he had helped the State's attorney at different times but not for a salary; that the witness was away from Preihs' office that evening for about an hour and twenty minutes while the others were there. Oscar Jolly testified that the State's attorney was not out of the room with Fudge during the time the witness was there; that he was in Preihs' office about two hours and that nobody left during that time. Other witnesses testified that the State's attorney and Fudge left, as hereinbefore stated, and that Jolly went with them. Fogerty testified that he was in the State's attorney's office when the statement was signed; that both Fudge and the State's attorney were in the front room all the time and that he heard no promises made to Fudge, and that he went with the State's attorney, Fudge and Jolly to the location where Fudge had stated he purchased liquor. Fogerty also testified that Preihs and Fudge talked about an hour; that he, the witness, left for Taylorville with Fudge about 11:00

586

o'clock, and that it is eighteen miles from Pana to Taylorville; that they got to Preihs' office about 9:00 o'clock, and that from then until 10:30 Preihs and Fudge were in the front room together. Preihs, the State's attorney, also took the stand in this preliminary hearing and denied that he had given any promises or made any threats and stated that he had tried to shame Fudge into telling the truth and told him that he would prepare a statement and wanted him to sign it, and that Fudge said he would do so. He and others stated that Fudge was brought to his office about 8:00 o'clock that evening. This witness also testified that no indictment or any information was pending against Corman at the time he got Fudge's statement, and it is evident from the record that there was no indictment for perjury pending against Fudge, as this was in April and Fudge was not indicted until the following August. Preihs also testified that he was a very intimate friend of Corman; that Corman had sued Fudge, Nave, Flesher, the sheriff, and Kerns, for damages, and that the witness told Fogerty, the deputy sheriff, when he left for Ottawa, to bring Fudge to his office in Pana instead of to the jail.

The court, after hearing this evidence, announced that if the court could know, as a matter of fact, that the confession is true it would be admissible and the question would be the weight to be given to it by the jury; that there were some peculiar circumstances connected with the case, including the facts that Fudge was under arrest under a warrant that had been recalled, that extra officers accompanied him back, and that instead of taking him direct to the county jail took him to the office of the State's attorney, in Pana, but the court ruled, "It does not appear to the court that whether what did occur was of such a character that the court could say that the confession was untrue as a matter of fact, and the objection will be overruled." This is a misconception of the law concerning the purpose of a preliminary examination to determine whether an alleged

confession is admissible in evidence. The only issue before the court on such a hearing is whether the confession was freely and voluntarily made, without coercion or promise of immunity. Confessions are competent only when they are voluntarily made. (*People* v. *Ziderowski,* 325 Ill. 232; *People* v. *Fox,* 319 id. 606; *People* v. *Rischo,* 262 id. 596.) In view of the fact that the court did not pass on the issue raised on this preliminary hearing and was evidently in doubt as to its admissibility, coupled with certain facts hereinbefore detailed which tend to corroborate the testimony of the plaintiff in error that the confession was not voluntary, we conclude that this confession was not satisfactorily shown to have been voluntary and this case must again be tried, the evidence concerning the admissibility of this alleged confession should be considered and passed upon by the trial court.

Counsel for plaintiff in error also argue that the State's evidence does not support the indictment as to the charge of perjury; that Amling was the only witness who testified for the State aside from the confession of the plaintiff in error that his statement before the grand jury was false. While the *corpus delicti* of a crime cannot be proved by confession, alone, yet there was evidence other than that contained in the statement of the foreman of the grand jury. Corman testified denying the truth of plaintiff in error's testimony concerning sale by him. Fudge testified on the witness stand and related his testimony before the grand jury, which, in substance, corroborated the statement of the foreman. Fudge is charged with giving false testimony before the grand jury. It is necessary to prove not only the substance of that testimony as laid, (*Martinatis* v. *People,* 223 Ill. 117; *Hereford* v. *People,* 197 id. 222;) but it is also necessary to prove that his testimony before that grand jury was false. (*People* v. *Glenn,* 294 Ill. 333.) Fudge and Nave testified on this trial that this liquor was purchased from Corman on the dates specified in Fudge's

testimony before the grand jury. Bottles containing such liquor were introduced in evidence. That liquor was shown to have the same alcoholic content as that taken from Corman in the raid by Federal officers. The case in the Federal court was remanded to Christian county on the statement of the State's attorney of that county that all of such cases, not only against Corman but against others, would be prosecuted. But this was not done. Against this evidence is only the denial of Corman of the truth of Fudge's testimony and the statement of Fudge made in the State's attorney's office that his testimony before the grand jury was not true. We are not convinced that it can be said, under all the circumstances shown in this record, that the falsity of that testimony was shown beyond a reasonable doubt.

It is evident from this record that this plaintiff in error was indicted during a time when much feeling was indulged by certain of the officials in Christian county concerning the enforcement of the Prohibition act. It is argued by the State that the record shows that the charge against James Corman was manufactured by the sheriff because of the disallowance of some of the bills of the sheriff by the board of supervisors, of which Corman was a member. Whether that be true or not, there is no evidence of that matter in the record. The error on the part of the trial court in refusing to hear evidence on the challenge to the array went to the fundamental right of the plaintiff in error to be tried according to law.

Other errors are assigned which will probably not recur on another trial and need not be further considered here.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Mr. JUSTICE FARMER, dissenting.