(No. 29428.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MICHAEL SWITALSKI, Plaintiff in Error.

*Opinion filed Sept. 18, 1946—Rehearing denied November 14, 1946.*

ALFRED M. LOESER, of Chicago, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and WILLIAM J. TUOHY, State's Attorney, of Chicago, (EDWARD E. WILSON, JOHN T. GALLAGHER, and MELVIN S. REMBE, all of Chicago, of counsel,) for the People.

Mr. JUSTICE SMITH delivered the opinion of the court:

Plaintiff in error, Michael Switalski, was charged by an amended information filed in the county court of Cook county with the violation of section 24 of the Medical Practice Act. (Ill. Rev. Stat. 1945, chap. 91, par. 16i.) The information contained two counts. The first count alleged that on October 21, 1943, plaintiff in error diagnosed, or attempted to diagnose, the ailment of Mary Amedio. The second count alleged that on the same date plaintiff in error unlawfully attempted to treat and heal, and prescribed medicines and treatments for the supposed ailments of Mary Amedio. Plaintiff in error pleaded not guilty to both counts. Upon a trial the jury found him guilty on the first count and not guilty on the second count. Plaintiff in error made a motion for judgment notwithstanding the verdict and, in the alternative, for a new trial. Both motions were overruled, as was also a motion in arrest of judgment. Plaintiff in error was sentenced to pay a fine of $200 and costs. To reverse the judgment of conviction he has sued out a writ of error from this court alleging a denial of certain constitutional rights.

Plaintiff in error first contends that the county court of Cook county has no jurisdiction in criminal cases, for the reason that jurisdiction in such cases, arising in Cook county, is vested solely in the criminal court by section 2 of division X of the Criminal Code. (Ill. Rev. Stat. 1945, chap. 38, par. 701.) For this reason it is argued that the county court had no jurisdiction to entertain this action.

In support of this contention plaintiff in error relies upon the case of *People ex rel. Chicago Bar Ass'n* v. *Feinberg*, 348 Ill. 549. In that case a judge of the circuit court of Cook county attempted to exercise the powers of a judge of the criminal court without having been assigned to the criminal court, in the manner provided by the rules of the circuit court. In assuming to act as a judge of the criminal court he was not attempting to exercise the jurisdiction of the circuit court. He was attempting to exercise the jurisdiction of the criminal court. It was held that, although some of the judges of the criminal court are to be assigned to that court from the judges of the circuit court, it did not follow that all circuit judges were *ex officio* judges of the criminal court at all times. It was there pointed out that before a circuit judge was authorized to act as a judge of the criminal court, it was necessary that he be assigned to that office in accordance with the law and the rules of the court. It is obvious that in reaching the conclusion announced in that case, it was not necessary for the court to consider the question of whether any other court in Cook county was authorized to exercise criminal jurisdiction concurrently with the criminal court. When the language used in that case is considered in connection with the facts involved, it is clear that the case does not support the contention of plaintiff in error in this case. The court there reviewed and distinguished the cases of *People* v. *Jacobson*, 247 Ill. 394, and *People* v. *Warren*, 260 Ill. 297, both of which expressly hold that jurisdiction in criminal cases conferred upon the criminal court of Cook

county is not exclusive. The same principle was announced in *Berkowitz* v. *Lester,* 121 Ill. 99, and *Myers* v. *People,* 67 Ill. 503. In view of our holdings in these cases, it is unnecessary for us to discuss the cases from other jurisdictions cited by plaintiff in error. The contention of plaintiff in error on this branch of the case cannot be sustained.

The next contention of plaintiff in error is that the prosecution was barred by the statute of limitations. The pertinent facts on which this contention is based are as follows: The case was instituted by an information filed on October 18, 1944. The offense of which plaintiff in error was found guilty was committed on October 21, 1943. In the original information it was erroneously alleged that the offense was committed on October 19, 1943. The same erroneous date was alleged in the first amended information which was filed on January 23, 1945. On April 24, 1945, more than eighteen months after the alleged offense was committed, a second amended information was filed in which it was alleged that the offense was committed on October 21, 1943. Plaintiff in error contends that the second amended information charged a different offense from that charged in the original and in the first amended informations, and that the second amended information on which he was tried, having been filed more than eighteen months after the commission of the offense, the prosecution was barred by section 4 of division IV of the Criminal Code. (Ill. Rev. Stat. 1945, chap. 38, par. 631.) Section 6 of division IV of the Criminal Code (Ill. Rev. Stat. 1945, chap. 38, par. 633,) provides as follows: "When an indictment, information or suit is quashed, or the proceedings on the same are set aside, or reversed on writ of error, the time during the pendency of such indictment, information or suit, so quashed, set aside or reversed, shall not be reckoned within the time limited by this act, so as to bar any new indictment, information or suit for the same offense."

In *Swalley* v. *People,* 116 Ill. 247, the above-quoted section of the statute was construed. In that case the defendants were indicted for burglary. The limitation for that offense was three years. The crime was committed in August, 1881. An indictment was returned at the May term of court, 1884, charging the defendants with the burglary, which was erroneously alleged to have been committed on May 1, 1884. This indictment was *nolle prossed* at the October term, 1884. At the February term, 1885, a new indictment was returned which erroneously alleged the crime to have been committed on February 2, 1885. The question being raised as to the statute of limitations, the People made proof of the identity of the offenses charged in the two indictments. The identity of the offense being established, the court said: "Whether the time during which the first indictment· was pending is not to be reckoned, depends upon whether the proceedings on the first indictment were 'set aside' within the meaning of the section above cited. The section names three modes of disposition of the indictment: quashing it, reversal of the proceedings thereon on error, and setting aside the proceedings on it. The first two are specific modes, the last is general. To 'set aside' is very broad in scope,—'to defeat the effect or operation of;' and we think it may well be held to embrace here every other mode of defeat of the proceedings on an indictment, than quashing it and reversal on error, and so, that the manner of disposal of the first indictment amounted to a setting aside of the proceedings under it, and came within the saving clause of the section."

In the light of the foregoing rule, the only question here involved is whether the offense alleged in the second amended information is the same offense as the one charged in the original information, so that the running of the statute of limitations was tolled by the pendency of the original information. If plaintiff in error had raised this question at the trial by a motion to quash, the prosecution

could have introduced parol evidence to prove the identity of the two offenses. (*People v. Hobbs*, 361 Ill. 469; *Swalley v. People*, 116 Ill. 247.) It does not appear from the record that the question was raised by a motion to quash the information. On this state of the record the People cannot be prejudiced by failing to produce parol evidence of the identity of the offenses. In passing on this question we may examine the entire record before us for evidence of such identity. The testimony of the prosecuting witness is that she first saw plaintiff in error on October 21, 1943. In this she is corroborated by plaintiff in error. On that day her ailments were diagnosed by someone at plaintiff in error's place of business. The only dispute as to the facts is whether it was plaintiff in error or Dr. Monroe who conducted the examination and made the diagnosis. It is established by the evidence that the diagnosis complained of took place on October 21, 1943. Under the evidence it could not have occurred on October 19, 1943. It is, therefore, reasonable to assume from the evidence that the offenses charged in the original and in the second amended informations are, in fact, one and the same offense, in spite of the apparent discrepancy in dates. The running of the statute of limitations was, therefore, tolled by the pendency of the original information and the prosecution of this action under the second amended information was not barred by the limitation section of the statute.

Plaintiff in error also argues that the jury was improperly selected, and that his challenge to the array should have been sustained. Section 8 of the Jurors Act provides the manner in which jurors are to be drawn. (Ill. Rev. Stat. 1945, chap. 78, par. 8.) Section 10 of that act (Ill. Rev. Stat. 1945, chap. 78, par. 10,) provides that the clerk shall issue a summons to the sheriff, commanding him to summon not less than thirty petit jurors, which summons must be served before the sitting of the court. In this case

only twenty-five jurors were drawn. No summons was issued to the sheriff. The jurors were served by registered mail on the day before the cause was heard, and after the court was sitting. Section 9 of the Jury Commissioners Act (Ill. Rev. Stat. 1945, chap. 78, par. 32,) requires the presence of two jury commissioners, or one ·jury commissioner and a judge of a court of record, at the time the jurors are drawn by the clerk. Section 10 of that act (Ill. Rev. Stat. 1945, chap. 78, par. 33,) provides for "period jury lists" to be composed of persons whose jury service has been postponed. It requires persons on such lists to be given ten days' notice of the date on which they are to appear for service as jurors. Section 110 of the County Courts Act (Ill. Rev. Stat. 1945, chap. 37, par. 282,) provides that the court shall direct the clerk to issue a venire for not less than twelve, nor more than twenty-four, jurors. It is alleged that these various provisions of the statute were not observed.

It will be noted that there are three separate statutes providing the method of drawing and summoning jurors for service in county courts. First, we have the Jurors Act. (Ill. Rev. Stat. 1945, chap. 78, pars. 1-23.) This act was originally enacted in 1874. It prescribes the procedure to be followed in all counties. The Jury Commissioners Act (Ill. Rev. Stat. 1945, chap. 78, pars. 24-35) was enacted in 1887. It prescribes a different procedure for counties with a population in excess of 140,000. Section 110 of the County Courts Act (Ill. Rev. Stat. 1945, chap. 37, par. 282,) provides an alternative method when a jury is not summoned, "in the same manner as is provided for the drawing or summoning of juries for the circuit court." The Jurors Act provides for the summoning of not less than thirty jurors. (Ill. Rev. Stat. 1945, chap. 78, par. 10.) This section, however, was superseded in Cook county by the Jury Commissioners Act. Section 9 of that act, which is applicable to Cook county, provides

for the summoning of the number of petit jurors which has previously been certified to the clerk by the court as the number necessary for that month. Ill. Rev. Stat. 1945, chap. 78, par. 32.

There is no evidence here, nor does plaintiff in error contend, that twenty-five jurors was not the number certified to the clerk by the judge of the county court as the number of jurors necessary for that month. In this state of the record it must be presumed that the statute was complied with. The jury was called in accordance with the provisions of the Jury Commissioners Act. It was not necessary to comply with the County Courts Act. There is no merit in the contention that it was improper to summon twenty-five jurors in this case.

The argument that the jurors were not properly summoned because they were notified by registered mail instead of being summoned by the sheriff is, likewise, without merit. Section 9 of the Jury Commissioners Act provides that the clerk shall "certify to the sheriff the electors whose names are so drawn, to be summoned according to law." (Ill. Rev. Stat. 1945, chap. 78, par. 32.) It appears from the record that the judges of the circuit, superior and county courts of Cook county have provided by court rule for the summoning of petit jurors by registered mail. It is not necessary to decide, however, whether such summons by registered mail is a summons "according to law," as required by the act, because section 12 of the Jury Commissioners Act (Ill. Rev. Stat. 1945, chap. 78, par. 35,) provides, "No objection, exception or challenge to any petit juror or grand juror or to any panel of petit or grand jurors shall be allowed at any time because of any failure to comply with the provisions of this act or of the said rules, unless the party urging the same shall show to the court that actual and substantial injustice has resulted or will result to him, because of the error or defect charged." Neither the challenge to the array, nor the affidavit in sup-

port thereof, alleges that plaintiff in error has been or will be harmed or prejudiced by the alleged errors in the procedure followed in the drawing or summoning of the jurors. In his reply brief, plaintiff in error states that section 12 of the Jury Commissioners Act is unconstitutional, because the test of "substantial injustice" is too indefinite and can neither be proved nor applied. It is a sufficient answer to this contention to point out that this court has, for many years, used the test of "substantial injustice" as determinative of whether or not a challenge to the array was properly overruled, and has experienced no difficulty in applying it to individual cases. (*People* v. *Lieber*, 357 Ill. 423; *People* v. *Colegrove*, 342 Ill. 430; *People* v. *Fudge*, 342 Ill. 574; *People* v. *Corder*, 306 Ill. 264.) Moreover, no such question was raised or urged in the trial court and it is not open to consideration here.

Section 12 of the Jury Commissioners Act (Ill. Rev. Stat. 1945, chap. 78, par. 35,) is also a sufficient answer to plaintiff in error's contention that the proper officers were not present at the drawing of names as provided in section 9 of that act. (Ill. Rev. Stat. 1945, chap. 78, par. 32.) As to the contention that no proper notice was given to those jurors who were on the "period jury list," it is sufficient to point out that, assuming some of the jurors were on the period jury list, the statute provides that failure to send the statutory notice "shall not affect the duty of the elector to appear as required at the time of his temporary excuse." Ill. Rev. Stat. 1945, chap. 78, par. 33.

The verdict of the jury is attacked by plaintiff in error as being against the weight of the evidence. The State introduced only one witness, who testified that on October 21, 1943, she went to plaintiff in error's place of business at 1223 West Milwaukee Avenue, in the city of Chicago, accompanied by her husband; that "Dr. Michael," as she called plaintiff in error, was out, but after they had waited a short while he came in and gave her a medical examina-

tion which included questions concerning her past physical history, manual probing of her side, a blood pressure test, a stethoscopic heart examination and an oral examination; that he diagnosed her ailment as inflamed fallopian tubes and ovaries; that he prescribed medicine and pills which he delivered to her; that he also prescribed and applied treatment with a "Nature Lamp;" that her husband paid him $10; that after she had been examined by plaintiff in error, Dr. Monroe came in and at plaintiff in error's request wrote down her case history; that she was not examined by Dr. Monroe until two weeks later; and that on October 21, 1943, the door at 1223 Milwaukee Avenue had on it the names of Dr. Michael, Dr. Cooney, Dr. Monroe and Dr. Kennedy.

To rebut this testimony, plaintiff in error produced nine witnesses in addition to taking the stand himself. Of these witnesses, six testified only as to his good reputation and character. The other three witnesses called by plaintiff in error testified concerning what occurred on the date of the interview in question. Emily Rybstat, an employee of plaintiff in error, testified that when the prosecutrix and her husband came into the office on October 21, 1943, she reported their presence to Dr. Monroe; that they went into the room where Dr. Monroe was; that plaintiff in error was not in the room with Dr. Monroe at the time the prosecutrix entered; that "Dr. Michael," as she called plaintiff in error, came in later and went into the room with Dr. Monroe and the prosecutrix; that the handwriting on the patient's records relating to prosecutrix, and on the bottle of medicine given prosecutrix, was that of Dr. Monroe. Plaintiff in error's wife testified that she was present in the office on October 21, 1943, and remembered that Dr. Monroe was there and that Mrs. Rybstat took the prosecutrix and her husband in to see Dr. Monroe; and that Dr. Monroe is a medical doctor and the diagnostician in the store. Dr. Alma Monroe

testified that she is a licensed physician and surgeon; that she met the prosecutrix on October 21, 1943; that she thought she treated the prosecutrix once, but could not fix the exact date; that defendant's exhibit 4, which is the clinical record of the prosecutrix, is partly in her handwriting and partly in the handwriting of someone else; that the writing on the bottle introduced as plaintiff's exhibit 1 was her handwriting.

Plaintiff in error testified in his own behalf that he is a graduate of the National College of Drugless Physicians, with degrees in Drugless Therapy and Naprapathy; that he also holds a degree in Chiropractics; that he operates a store at 1643 West North Avenue, where medicines are manufactured, and the place of business at 1223 Milwaukee Avenue, where his medicines are sold; that he first saw prosecutrix on October 21, 1943, when he entered Dr. Monroe's room; that he did not examine the prosecutrix, or dictate to Dr. Monroe her symptoms or his findings; that the handwriting on the clinical record is that of Dr. Monroe and Dr. Cooney, the latter a medical doctor now deceased; that he did not attempt to diagnose the ailments of the prosecutrix on October 21, 1943, nor did he prescribe medicine or treatments for her on that day; that Dr. Monroe treated and prescribed for prosecutrix on that day; that he did not give a bottle of medicine to prosecutrix on October 21, 1943; and that the handwriting on the bottle which was given prosecutrix on that date is that of Dr. Monroe.

It is noted that only the testimony of plaintiff in error completely negatives the prosecutrix's story that she was treated by him. Mrs. Switalski and Mrs. Rybstat were, by their own admission, not present in the room where the prosecutrix was diagnosed, prescribed for and treated. Dr. Monroe testified that she treated the prosecutrix once, but was unable to state the date definitely. This is consistent with the prosecutrix's testimony that she was treated by

Dr. Monroe about two weeks after the date in question. On the basis of such evidence, the weight of the evidence and the credibility of the witnesses were questions for the jury to determine, and this court will not substitute its judgment for that of the jury on those questions. *People* v. *Orlando,* 380 Ill. 107.

While more witnesses testified for plaintiff in error than were called by the People, it is the established rule that the weight of the evidence is not to be determined by the number of witnesses alone. It is true that in some respects plaintiff in error was corroborated on some points by three of his witnesses. It is equally true that the material and decisive facts must be determined from his testimony and that of the prosecutrix. Such corroboration of his testimony as the record shows on some collateral and undecisive facts is largely offset by other facts in the record tending to discredit him. For instance, he testified that no part of exhibit 4 was in his handwriting, Nevertheless, a comparison of some of the handwriting on that exhibit with his signature to the affidavit attached to his challenge to the array, strongly indicates that both were written by the same hand. We cannot say upon the whole record that the jury was not warranted in disbelieving his testimony and that of his wife and two of his associates, which tended to corroborate him.

The final contention of plaintiff in error is that the State's Attorney, in his argument to the jury, used improper and inflammatory language and arguments which were not based on the evidence, the effect of which was to prejudice the jury, notwithstanding the fact that the court instructed the jury to disregard such arguments. The first language complained of is the statement made by the prosecutor that he did not have to waste too much time "because the object of the defense will be to confuse the jury." No objection was made at the time to this remark, and no attempt made to seek a ruling from the court as to its

propriety. Having failed to object when the remark was made, plaintiff in error cannot urge such an objection now. (*People* v. *Allen,* 368 Ill. 368; *People* v. *Ruben,* 366 Ill. 29; *Earll* v. *People,* 99 Ill. 123.) The other language considered objectionable by plaintiff in error was the statement by the prosecutor that he "just decided to practice without taking any examination, setting himself up in business and has been doing the same for a number of years." This statement was objected to. The court promptly sustained the objection and instructed the jury to disregard the statement. This action of the court was sufficient to cure the error, if any. (*Kulvie* v. *Bunsen Coal Co.* 253 Ill. 386.) We find no reversible errors in the record.

The judgment of the county court of Cook county is affirmed.

*Judgment affirmed.*