2003 SD 129

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Charles CHERNOTIK, Defendant and Appellant.**

No. 22304.

Supreme Court of South Dakota.

Considered on Briefs Jan. 13, 2003.

Reassigned May 7, 2003.

Decided Oct. 22, 2003.

Lawrence E. Long, Attorney General, Becky Janssen, Assistant Attorney General, Pierre, for plaintiff and appellee.

Steven R. Smith, Andera & Smith Law Firm, Rapid City, for defendant and appellant.

ZINTER, Justice (on reassignment).

[¶ 1.] Charles Chernotik was convicted of raping his stepbrother, J.C., in the family hot tub at J.C.'s home in Chamberlain. Chernotik appeals claiming error in (1) amending the complaint after the statute of limitations expired, and (2) in introducing other acts evidence. We affirm.

## FACTS AND PROCEDURAL HISTORY

[¶ 2.] J.C. was interviewed by the Department of Social Services, the Sheriff's office, and the Chamberlain Police Department on April 24, 2001. That interview occurred two days before J.C.'s twenty-fifth birthday, which was also two days before the statute of limitations was to expire on the crime at issue in this case. In the interview, J.C. disclosed a course of sexual molestation perpetrated upon him by Chernotik. The molestation began when J.C. was approximately five years old and continued until he was sixteen.

[¶ 3.] On April 25, 2001, the day before J.C.'s twenty-fifth birthday and the day before the statute of limitations was to expire, the State filed a complaint against Chernotik. Count III alleged the crime of rape in violation of SDCL 22–22–1. Rape can occur under seven different "circumstances" according to this statute.[1] Count III alleged that this rape occurred by fellatio with J.C. under forcible circumstances as described in subdivision (2) of SDCL 22–22–1. Count III specifically alleged that Chernotik:

> Did perform sexual penetration on another through the use of force, coercion or threat of immediate and great bodily harm against the victim, to-wit: did perform fellatio upon J.C., date of birth being April 26, 1976, through the use of threat or intimidation during the calendar year 1995 in Chamberlain, South Dakota, in violation of SDCL 22–22–1(2).

The factual incident underlying Count III involved an act of fellatio with J.C. in his parents' hot tub at their home in Cham-

---

1. *See infra* note 4.

berlain. The incident is hereinafter referred to as "the hot tub incident."

[¶ 4.] On May 30, 2001, about a month after the statute of limitations expired, the State filed two amendments to Count III. The first amendment changed the alleged date of the offense from 1995 to "on or between May 1990." The second amendment changed the "circumstances" alleged. It still charged rape in the hot tub incident, but it changed the circumstance to that described in subdivision (5) of SDCL 22–22–1.[2] Rape committed under that circumstance is commonly referred to as statutory rape.

[¶ 5.] On June 4, 2001, the court conducted a preliminary hearing. J.C. testified that he was forced to perform the fellatio on Chernotik in the hot tub incident in November 1986.[3] To conform the charge to J.C.'s testimony concerning this date, the State again amended Count III to allege that the date of the offense was "on or about 1986."

[¶ 6.] Chernotik objected to these amendments and moved to dismiss Count III on the ground that the statute of limitations had expired before the amendments were made. The statute of limitations at issue provided that an action for rape "may be commenced at any time prior to the time the victim becomes age twenty-five or within seven years of the commission of the crime, whichever is longer." SDCL 22–22–1. Although Chernotik was originally charged one day before J.C.'s twenty-fifth birthday, Chernotik contends that the charge was not timely because the amendments were made after the statute of limitations had expired on J.C.'s twenty-fifth birthday.

[¶ 7.] Chernotik also objected to "other acts" evidence involving J.C. and another victim. The other victim, C.O., was J.C.'s sister and Chernotik's stepsister. The acts involving C.O. began in the summer of 1978 when C.O. was seven and Chernotik was twelve. C.O. was awakened during the night to find Chernotik taking off her swimsuit bottom. She disclosed that Chernotik digitally penetrated her, fondled her and himself, put his genitals in her face, and rubbed himself on her. She testified that similar acts occurred for the next seven years. Chernotik was not charged with the offenses against C.O. because the statute of limitations had expired. The trial court allowed the other acts to prove a common plan or scheme, absence of mistake or accident, and proof of motive, intent, opportunity, knowledge, continuing course of conduct and identity.

[¶ 8.] The trial evidence reflected that the hot tub incident occurred in the fall of 1986 when J.C. was ten and Chernotik was nineteen years old. As at the preliminary hearing, J.C. testified that Chernotik undressed and followed J.C. into the hot tub at the family home. Chernotik then stimulated himself and forced J.C.'s mouth on Chernotik's penis. This continued for several minutes until Chernotik ejaculated into J.C.'s mouth, and Chernotik forced J.C. to ingest the semen. The jury found Chernotik guilty of the hot tub incident involving J.C. and not guilty on five other

---

**2.** SDCL 22–22–1(5) provides that statutory rape occurs if: "the victim is ten years of age, but less than sixteen years of age, and the perpetrator is at least three years older than the victim[.]" In November, 1986, J.C. was age 10 and Chernotik was age 19.

**3.** J.C. also indicated that the molestation was "a norm" that "escalated with each incident." He stated that he "remember[ed] [Chernotik] having taken my underwear off before, him being naked, stimulating himself in front of me, putting my hand onto his genital area ... putting my head onto his penis ... incidents like that."

counts involving D.R., Chernotik's step-daughter.

[¶ 9.] Chernotik raises two issues on appeal:

1. Whether the State could amend the complaint after the statute of limitations expired.

2. Whether the trial court erred in admitting other acts evidence.

## DECISION

### A Complaint, Amended After the Statute of Limitations Has Expired, May Relate Back.

[¶ 10.] Chernotik concedes that filing of the initial complaint on April 25, 2001, timely "commenced" a rape charge against him. *See* SDCL 23A–42–4 (stating that a charge is "deemed commenced by the filing of a complaint, information or indictment . . ."). The question is whether the amendments of May and June 2001 charged a new offense that was barred by the statute of limitations, or, whether those amendments related back to the time of filing the original complaint. Chernotik argues that the amendments were substantive changes that were substantially different than the original charge. He also argues that original and amended charges were mutually exclusive. He therefore contends that the amendments did not relate back.

[¶ 11.] SDCL 23A–6–19 permits amendments, but does not address the relation back doctrine. It provides in part:

If trial has not commenced, a prosecuting attorney may amend an information to allege, or to *change the allegations regarding, any offense arising out of the same alleged conduct of the defendant* that gave rise to any offense alleged in the original information. If the change alleges a new offense, the defendant has the right to a preliminary hearing on the new offense.

*Id.* (emphasis added).

[¶ 12.] Here, the changes in the time and statutory circumstance of the rape arose "out of the same alleged conduct of the defendant," i.e., the hot tub incident. Moreover, the trial court offered Chernotik a continuance of the preliminary hearing. However, that offer was not accepted. Therefore, although Chernotik did not have a new preliminary hearing, he was given that opportunity and declined to exercise that statutory right.

[¶ 13.] Instead of exercising his right to another preliminary hearing, Chernotik argues that the amended complaint was barred by the statute of limitations. The State responds by arguing that the filing of the initial complaint unconditionally tolled the statute of limitations. We do not agree that the filing of the complaint unconditionally tolled the statute of limitations for all amendments. Instead, the statute of limitations is tolled, and amendments relate back to the filing of an initial complaint, if certain conditions are met.

[¶ 14.] Although "relation back" jurisprudence is a question of first impression in this Court, many other jurisdictions have addressed the issue. Those jurisdictions hold that when the government commences a prosecution by filing a timely charging document, the filing of an amendment after the statute of limitations has expired will not divest the court of jurisdiction unless the amendment broadens or substantially amends the original charges. *See, e.g., United States v. Schmick*, 904 F.2d 936, 940 (5thCir.1990); *United States v. Elliott*, 849 F.2d 554, 561 (11thCir.1988); *United States v. Friedman*, 649 F.2d 199, 204 (3dCir.1981); *United States v. Grady*, 544 F.2d 598, 601–02 (2dCir.1976); *State v.*

*Almeda*, 211 Conn. 441, 560 A.2d 389, 392 (1989); *Benitez v. State*, 111 Nev. 1363, 904 P.2d 1036, 1036 (1995). We agree with these authorities.

[¶ 15.] Under this relation back test, we first determine whether these amendments broadened the original charge. SDCL 22–22–1 defines rape as "an act of sexual penetration accomplished with any person *under any of [seven] circumstances* ...." [4] *Id.* (emphasis added). Subsection (2) (forcible rape), is the circumstance originally pleaded. Under that circumstance, a rape occurs "[t]hrough the use of force, coercion, or threats of immediate and great bodily harm against the victim...." Subsection (5) (statutory rape), is the circumstance alleged in the amendments. Under that circumstance a rape occurs "[i]f the victim is ten years of age, but less than sixteen years of age, and the perpetrator is at least three years older than the victim...." Forcible rape is a Class 2 felony, punishable by up to twenty-five years imprisonment and a fine of $25,000. However, the amended charge of statutory rape is a Class 3 felony, punishable by up to fifteen years imprisonment and a fine of $15,000. SDCL §§ 22–22–1, 22–6–1. Thus, these amendments did not broaden the original charge to a more serious crime, but rather narrowed it to a less serious crime.[5]

[¶ 16.] Moreover, the incident charged in the amendments is not substantially different than that charged in the original complaint. It is not substantially different because, even though the amendments changed the date and statutory circumstances of the *rape*, the underlying incident of *rape* remained the same. In point of fact, the rape (occurring by fellatio in the "hot tub incident" in Chamberlain) as alleged in the original complaint, is the same rape (occurring by fellatio in the "hot tub incident" in Chamberlain) for which Chernotik was convicted. Indeed, there is no dispute that: (1) the underlying allegations supporting the original complaint involved the hot tub incident; (2) the evidence introduced at the preliminary hearing related to that hot

4. SDCL 22–22–1 provides:
   Rape is an act of sexual penetration accomplished with any person under any of the following circumstances:
   (1) If the victim is less than ten years of age; or
   (2) Through the use of force, coercion, or threats of immediate and great bodily harm against the victim or other persons within the victim's presence, accompanied by apparent power of execution; or
   (3) If the victim is incapable, because of physical or mental incapacity, of giving consent to such act; or
   (4) If the victim is incapable of giving consent because of any intoxicating, narcotic or anesthetic agent or hypnosis; or
   (5) If the victim is ten years of age, but less than sixteen years of age, and the perpetrator is at least three years older than the victim; or
   (6) If persons who are not legally married and who are within degrees of consanguinity within which marriages are by the laws of this state declared void pursuant to § 25–1–6, which is also defined as incest; or
   (7) If the victim is ten years of age but less than eighteen years of age and is the child of a spouse or former spouse of the perpetrator.
   A violation of subdivision (1) of this section is rape in the first degree, which is a Class 1 felony. A violation of subdivision (2), (3), or (4) of this section is rape in the second degree, which is a Class 2 felony. A violation of subdivision (5), (6), or (7) of this section is rape in the third degree, which is a Class 3 felony. Notwithstanding § 23A–42–2 a charge brought pursuant to this section may be commenced at any time prior to the time the victim becomes age twenty-five or within seven years of the commission of the crime, whichever is longer.

5. We do note, however, that the seriousness of the amended crime is not dispositive. *See infra* ¶ 24.

tub incident; (3) the amendments related to that hot tub incident; and (4) the jury convicted on that same hot tub incident. Under such circumstances, where there was only one hot tub incident ever at issue in the original complaint and all amendments, there was no broadening or substantial amendment of the original charge. The amendments certainly did not broaden or substantially amend any factual aspect of the incident.[6]

[¶ 17.] Consequently, the amendments failed to legally broaden or substantially amend the original charge under both federal and state authority. Relevant federal authorities point out that notice to the defendant of the activities at issue is the central policy underlying relations back and the limitations doctrines. *Schmick*, 904 F.2d at 940. Therefore, *Schmick* holds that a complaint is not broadened or substantially amended as long as the defendant is on notice of the activities at issue, and as long as the amendments are substantially the same in the old and new complaints. *Schmick* reasons:

> Notice to the defendant is the central policy underlying the limitations doctrine. Similarly, notice is the touchstone in deciding whether a superseding indictment substantially changes the original charges. A timely, pending indictment serves this purpose by apprising the defendants "that they will be called to account for *their activities* and should

prepare a defense." If the allegations and charges are substantially the same in the old and new indictments, the assumption is that the defendant has been placed on notice of the charges against him. That is, he knows that he will be called to account for *certain activities* and should prepare a defense.

*Id.* at 941 (emphasis added) (internal citations omitted). Thus, the *Schmick* holding, modified to include the facts of both Chernotik's and Schmick's cases, would read:

> The appellants were on notice that they were accused of planning to obtain unregistered firearms [in Chernotik's case, engaging in an act of fellatio with J.C. in the hot tub]. The original [complaint] generally referred to unregistered firearms [in Chernotik's case, rape by fellation in Chamberlain]; the superseding [complaint] merely further described the unregistered firearms used by the Bandidos [in Chernotik's case, it further described the date and statutory circumstance for the act of fellatio in the hot tub in Chamberlain]. *Where the facts alleged have not been changed, although additional underlying details have been alleged, a superseding indictment brought outside the statute of limitations is timely.*

*Id.* (emphasis added) (citing *Friedman*, 649 F.2d at 204).

---

**6.** In determining whether Chernotik's conviction was for the same incident alleged in the initial complaint, it is highly significant that there was only one incident of fellatio that ever allegedly occurred in the family hot tub at their home in Chamberlain. The day before the original complaint was filed, J.C. and other witnesses were interviewed about Chernotik's abuse. Although J.C. described an ongoing pattern of sexual abuse, he only described two specific incidents that became charged conduct in this case. One incident involved an attempted anal penetration, but

that count of the complaint (Count IV) was ultimately dismissed. The hot tub incident (Count III) was the only other specific incident mentioned. J.C. indicated in that April 24, 2001 interview that the hot tub incident occurred when he lived in Chamberlain between 1983 and 1986. He remembered the incident because it was the first time Chernotik ejaculated into J.C.'s mouth. Because J.C. did not relate any other specific incidents, there is nothing in the record to suggest that the amendments broadened or substantially changed the incident originally charged.

[¶ 18.] Other federal authorities also support this conclusion. *See Elliott*, 849 F.2d at 561 (holding that in a drug smuggling prosecution, even though "additional underlying facts relating to the transportation of marijuana *and changes in some time periods* and amounts of marijuana [were] involved[, t]he *ultimate acts charged* [were] the same in both indictments." Therefore, the amendments did not broaden or substantially amend the original charges) (emphasis added); *Friedman*, 649 F.2d at 204 (holding that although additional underlying details were alleged, *the basic facts alleged* were not changed, thus the primary purpose of the statute of limitations was met); *Grady*, 544 F.2d at 602 (concluding that to the extent any change of substance was made at all, the *charges were narrowed*, not broadened).

[¶ 19.] This focus on notice to the defendant of the incident or activities of the defendant, *even if the charges change*, is also recognized in state courts.

> [The] principal purpose [of the statute of limitations] is to ensure "that a defendant receives notice, within a prescribed time, *of the acts* with which he is charged, so that he and his lawyers can assemble the relevant evidence [to prepare a defense] before documents are lost [and] memor[ies] fade...." If, therefore, *the facts underlying* a superseding information *substituting a different charge* in a continuing prosecution *are substantially similar to the facts* underlying a timely filed information, the main purpose of the statute of limitations has been fulfilled, i.e., timely notice to the defendant of *the factual allegations* against which he will be required to defend. If that aim is accomplished, a previously filed information may toll the statute of limitations.

*Almeda*, 560 A.2d at 392 (emphasis added) (internal citations omitted). Consequently, even though the original information in *Almeda* charged that defendant with attempted murder, the statute of limitations was tolled for a prosecution for first-degree assault on a substitute information. It was tolled because *the factual allegations underlying* the substitute information charging Almeda with assault in the shooting of Ricky Wynn were the same as the facts underlying the original information charging Almeda with the attempted murder of Ricky Wynn. The changes related back because Almeda was not called upon to answer for any *activities* that he had not been required to defend against in his first trial on the original information. *Id.* See also *Commonwealth v. Taraschi*, 327 Pa.Super. 179, 475 A.2d 744, 751 (1984) (ruling that "[t]he only question to be considered in determining the sufficiency of the [amended] complaint is whether the accused was sufficiently informed that he might be put on trial for the crime charged in the indictment"); *People v. Whitfield*, 19 Cal.App.4th 1652, 24 Cal.Rptr.2d 210, 215 (1993) (holding that because amended prostitution offenses "were based on the same conduct as the rapes for which the defendant was being prosecuted, the filing of the information [on rape] tolled the statute of limitations" for the lesser prostitution offenses); *State v. Eppens*, 30 Wash. App. 119, 633 P.2d 92, 96 (1981) (holding "an amended pleading relates back to the filing date of its predecessor so long as the claim in the pleading 'arose out of the conduct, transaction, or occurrence set forth *or attempted to be set forth* in the original pleading'") (emphasis added).

[¶ 20.] The premise underlying these cases is consistent with our precedent. Generally, the function of a charging document such as a complaint is to "appraise the defendant with reasonable certainty of the charge with which [the defendant] is

accused and to allow [the defendant] to plead ... acquittal or conviction as a bar to a subsequent prosecution for the same offense." *State v. Anderson,* 1996 SD 46, ¶ 12, 546 N.W.2d 395, 399 (citing *State v. Sinnott,* 72 S.D. 100, 30 N.W.2d 455, 456 (1947), *cert denied,* 334 U.S. 844, 68 S.Ct. 1512, 92 L.Ed. 1768 (1948)). Here, a rape in the hot tub incident involving J.C. in Chamberlain was the only charge in the initial version of Count III as well as all amendments. Moreover, Chernotik has not alleged that he was misled by the amendments. Indeed, the investigative reports as well as the preliminary hearing confirm that Chernotik was aware that the only allegation in Count III involved the hot tub incident. Therefore, Chernotik was on notice of the incident and activities for which he was convicted. Because Chernotik was not required to answer for any new incident that was not alleged in the original complaint, the relation back doctrine applies.

[¶ 21.] Chernotik, however, argues otherwise because he perceives that there are sufficient differences in the charges to support a finding of a substantially new and different offense.[7] Chernotik argues that the following alleged differences exist: (1) forcible rape and statutory rape are mutually exclusive; (2) only forcible rape allowed a consent defense and only statutory rape allowed an age defense; (3) the date of the original charge left open the possibility of an alibi defense because the victim and defendant lived in different cities at the time the act was originally alleged to have occurred; (4) statutory rape is not a lesser included offense of forcible rape; and (5) statutory rape is a time-sensitive charge because it must occur when the victim is between ten and sixteen years of age.

[¶ 22.] Chernotik's initial assertion of mutual exclusivity is quickly dispatched by the facts of this case. Here, Chernotik's conduct violated both circumstances of statutory and forcible rape because J.C. was young enough to support a charge of statutory rape and he was also forced to engage in the sexual act. Thus, contrary to being mutually exclusive, the facts of this case reflect that Chernotik's conduct concurrently violated both the forcible and the statutory circumstances under which fellatio constitutes rape.

[¶ 23.] Moreover, even if mutual exclusivity was present, it is of no legal consequence because the amended charge of statutory rape was merely a different circumstance under which the offense of rape in SDCL 22–22–1 occurs. Under this type of statute (where rape can occur under a number of circumstances) an amendment charging statutory rape in lieu of an initial charge of forcible rape does not charge a different offense for relation back analysis. It does not because each of the subdivisions of the rape statute merely define a different circumstance under which sexual penetration may constitute the crime of rape. *State v. LaMere,* 103 Idaho 839, 655 P.2d 46, 49 n. 4 (1992).[8]

---

7. A "new and different offense" does not necessarily preclude relation back. As previously noted, *substantive changes in charges may relate back. See Grady,* 544 F.2d at 602; *Almeda,* 560 A.2d at 392; *see also Whitfield,* 24 Cal.Rptr.2d at 215.

8. Section 18–6101 of the Idaho statute is analytically the same as SDCL 22–22–1. The Idaho statute provided:

Rape is an act of sexual intercourse accomplished with a female *under either of the following circumstances:*
1. Where the female is under the age of eighteen (18) years.
2. Where she is incapable, through lunacy or any other unsoundness of mind, whether temporary or permanent, of giving legal consent.

[¶ 24.] Chernotik next argues that, under his second and third alleged differences, the changes in date and circumstance alleged may have eliminated potential defenses. However, these defenses were never available because the record reflects that the date originally alleged was simply a mistake. Indeed, there can be no dispute that no rape could have occurred as originally alleged in 1995 because J.C. had moved from Chamberlain in 1992. Moreover, no statutory rape could have occurred in 1995 because J.C. was over 16 years of age. Therefore, it appears that when the state filed the initial complaint, the specific date alleged was simply a mistake. Under those circumstances where the offense could not have occurred on the date first alleged, the amended offense is the same as the first for statute of limitations purposes. *People v. Switalski*, 394 Ill. 530, 69 N.E.2d 315, 318 (1946). Additionally, it must be remembered that the time of commission of this offense was not material. We have previously held that "[t]he time of the occurrence is not a material element in statutory rape as the elements of that offense are not 'time dependent.'" *State v. Floody*, 481 N.W.2d 242, 247 (S.D.1992) (citations omitted). Consequently, the amendment changing the date relates back. *See also Elliott*, 849 F.2d at 561. Finally, it must be remembered that to the extent that these amendments may have eliminated "possible defenses," the elimination of a "possible defense" does not by definition broaden or amend "the charge."

[¶ 25.] Chernotik next observes that statutory rape is not a lesser included offense of forcible rape. However, that difference is of no consequence. Simply stated, none of the authorities discussing this issue require that the amendment be a lesser included offense to relate back. To the contrary, even "[t]he potential for imposition of a greater penalty under a superseding indictment does not render such charges broader than those in the original indictment." *Id.* (citing *United States v. Sears, Roebuck & Co., Inc.*, 785 F.2d 777, 779 (9thCir.1986), *cert denied*, 479 U.S.

3. Where she resists but her resistance is overcome by force or violence.
4. Where she is prevented from resistance by threats of immediate and·great bodily harm, accompanied by apparent power of execution; or by any intoxicating narcotic, or anaesthetic [sic] substance administered by or with the privity of the accused.
5. Where she is at the time unconscious of the nature of the act, and this is known to the accused.
6. Where she submits under the belief that the person committing the act is her husband, and the belief is induced by artifice, pretense or concealment practiced by the accused, with intent to induce such belief.
*LaMere*, 655 P.2d at 48 n. 1 (emphasis added). Like the Idaho statute, SDCL 22–22–1 provides:
Rape is an act of sexual penetration accomplished with any person *under any of the following circumstances:*
(1) If the victim is less than ten years of age; or

(2) Through the use of force, coercion, or threats of immediate and great bodily harm against the victim or other persons within the victim's presence, accompanied by apparent power of execution; or
(3) If the victim is incapable, because of physical or mental incapacity, of giving consent to such act; or
(4) If the victim is incapable of giving consent because of any intoxicating, narcotic, or anesthetic agent or hypnosis; or
(5) If the victim is ten years of age, but less than sixteen years of age, and the perpetrator is at least three years older than the victim; or
(6) If persons who are not legally married and who are within degrees of consanguinity within which marriages are by the laws of this state declared void pursuant to § 25–1–6, which is also defined as incest; or
(7) If the victim is ten years of age but less than eighteen years of age and is the child of a spouse or former spouse of the perpetrator. . . .

988, 107 S.Ct. 580, 93 L.Ed.2d 583 (1986)).[9]

[¶ 26.] Chernotik's final alleged difference is his contention that unlike forcible rape, statutory rape is a time sensitive charge because it must occur when the victim is between 10 and 16 years of age. Chernotik points out that J.C. did not fall within that time range in 1995. However, as was previously noted, statutory rape is not a time sensitive charge. *See supra* ¶ 23. Moreover, Chernotik's acts violated both the forcible and the statutory proscriptions. Therefore, he lost no ability to avoid a rape conviction, and even if he did, the elimination of a defense does not substantially amend the charge. Finally, J.C.'s age at the time of the hot tub incident was fixed, and Chernotik was aware of the statutory rape victim's age. Because there was no dispute over J.C.'s age, such an amendment was not prejudicial. *See LaMere*, 655 P.2d at 49.

[¶ 27.] In the final analysis, Chernotik was always on notice of the hot tub incident charged in Count III. Although the amendments changed a date and statutory circumstance of the rape, there was only one incident of rape ever at issue. Therefore, the amendments did not broaden or substantially amend the rape charge: if anything, they narrowed it, and the amendments relate back to the timely filing of the initial complaint.

## Other Act Evidence

[¶ 28.] The trial court permitted the other act evidence under SDCL 19–12–5 (Rule 404(b)) not to prove character, but as evidence of Chernotik's common scheme or plan, motive and intent, continuing course of conduct, and identity. We review the admission of other act evidence under the abuse of discretion standard.

*State v. Barber*, 1996 SD 96, ¶ 14, 552 N.W.2d 817, 820.

[¶ 29.] Here, the other acts evidence involved Chernotik's sexual abuse of his younger family members, C.O. and J.C. That conduct was ongoing over a number of years. The prior acts involving C.O. occurred from 1978 through 1986, while the acts involving J.C. occurred from 1980 through 1992. Thus, the pattern of abuse overlapped. It also appears that: (1) the sexual assaults took place in the family home or camper when the victims were isolated from others; (2) the sexual assaults took place while Chernotik was in a caretaking or authoritative role over his victims; (3) Chernotik used a similar pattern of coercive conduct to maintain the silence of J.C. and C.O.; and, (4) the modus operandi of the abuse was similar. With respect to similarity, the evidence reflects that: Chernotik rubbed his genitalia on the bodies of his victims for purposes of self gratification; he forced J.C. to perform fellatio and put his genitalia in the face of C.O.; he was approximately 10 years older than J.C. and five years older than C.O.; he was often left in charge of his younger siblings; he abused family members; he abused the victims in the family areas; he abused the victims when no one else was present or when everyone else was asleep, he used promises and threats to obtain the victims silence; and he committed the abuse over a lengthy period of time including a six-year period in which three family members were abused.

[¶ 30.] We have strongly encouraged trial courts to avoid the "blunderbuss" approach of simply declaring other acts evidence "admissible to prove any issue

---

9. Under this amended charge, Chernotik was actually subject to a lesser penalty. *See supra* ¶ 15.

including motive, identity, absence of mistake, intent, or plan, without independently applying each theory to the facts." *State v. Wright*, 1999 SD 50, ¶ 17, n. 6, 593 N.W.2d 792, 800. Here, however, before admitting the evidence, the trial court first identified a number of issues for which the other acts evidence was admissible and then analyzed whether the probative value of that evidence was substantially outweighed by its prejudicial effect. We agree that it was admissible to show Chernotik's identity, motive, intent, common plan or scheme, and continuing course of conduct. We also agree that the probative value of the evidence was not substantially outweighed by its prejudicial effect. Continuing abuse of children involving a similar modus operandi over a lengthy period of time is admissible as other acts evidence. *State v. Werner*, 482 N.W.2d 286, 290–91 (S.D.1992). Here, Chernotik began a course of sexual abuse against younger family members in 1978 when he was 12 years old and his stepsister was seven years old. While the abuse of the stepsister was ongoing, it also started with J.C. The sexual abuse of both victims then continued for six years and ended only when Chernotik moved from the State. We find no abuse of discretion in admitting this evidence.

[¶ 31.] Affirmed.

[¶ 32.] GILBERTSON, Chief Justice, and KONENKAMP, Justice, concur.

[¶ 33.] SABERS, and MEIERHENRY, Justices, dissent.

SABERS, Justice (dissenting).

[¶ 34.] I dissent for the following reasons:

[¶ 35.] SDCL 22–22–1, the rape statute, provides in part, " . . . a charge brought pursuant to this section may be commenced at any time prior to the time the victim becomes age twenty-five or within seven years of the commission of the crime, whichever is longer." Defendant concedes that filing the initial complaint "commenced" the charges against him. See also, SDCL 23A–42–4 (providing in part that a charge is deemed commenced "by the filing of a complaint, information or indictment[.]").

[¶ 36.] The day the initial complaint was filed was the last day the State could have criminally charged Defendant for his offenses against J.C. in the hot tub incident. The State amended the complaint on May 24, 2001 and June 4, 2001. Both of the amendments took place after the statute of limitation had expired. Defendant argues that these amendments were substantive changes as the original charge substantially differed from the amended charge and that the charges are mutually exclusive and barred.

[¶ 37.] SDCL 23A–6–19 provides in part:

> If trial has not commenced, a prosecuting attorney may amend an information to allege, or to change the allegations regarding, *any offense arising out of the same alleged conduct of the defendant* that gave rise to any offense alleged in the original information. If the change alleges a new offense, the defendant has the right to a preliminary hearing on the new offense.

(Emphasis supplied.) The State did change the allegations regarding an offense "arising out of the same alleged conduct of the defendant," e.g., the hot tub incident. The court offered a continuance of the preliminary hearing, but that offer was not accepted. The parties briefed the issue and the court heard arguments at a subsequent motion hearing. Defendant repeatedly raised objections based on the statute of limitation through the end of trial. He does not seek to have a new

preliminary hearing. Instead, he argues that his conviction should be reversed because the prosecution was untimely. The State responds that the filing of the initial complaint served to toll the statute of limitation, in essence, allowing the amendments to the complaint to "relate back" to the date of the first complaint.

[¶ 38.] Although this is a question of first impression for this Court, other jurisdictions have addressed analogous issues. Many courts have held that where the State commences a prosecution by filing a timely information or indictment, the filing of an amendment after the statute of limitation has expired will not divest the court of jurisdiction unless the amended information broadens or substantially amends the original charges. See e.g., *United States v. Schmick*, 904 F.2d 936, 940 (5th Cir.1990); *United States v. Elliott*, 849 F.2d 554, 561 (11th Cir.1988); *United States v. Friedman*, 649 F.2d 199, 203 (3d Cir.1981); *United States v. Grady*, 544 F.2d 598, 601 (2d Cir.1976); *Benitez v. State*, 111 Nev. 1363, 904 P.2d 1036, 1037 (1995); *State v. Almeda*, 211 Conn. 441, 560 A.2d 389, 392 (1989). I believe that this is the appropriate test.

[¶ 39.] A determination whether the amended complaint broadened or substantially amended the original complaint requires comparison of the facts of the crime originally charged with the facts of the crime supporting the conviction. SDCL 22–22–1 provides, "[r]ape is an act of sexual penetration accomplished with any person under any of the following circumstances[.]" Subsection (2) (forcible rape), the section Defendant was originally charged with, provides, "[t]hrough the use of force, coercion, or threats of immediate and great bodily harm against the victim or other persons within the victim's presence, accompanied by apparent power of execution[.]" Subsection (5) (statutory

rape), the charge supporting the conviction, provides, "[i]f the victim is ten years of age, but less than sixteen years of age, and the perpetrator is at least three years older than the victim[.]" Subsection (5) is rape in the third degree, a Class 3 felony, whereas subsection (2) is rape in the second degree, a Class 2 felony. Both subsections are subject to the statute of limitation cited above. This amendment did not broaden the original charge to a more serious crime but narrowed it to a less serious crime.

[¶ 40.] Defendant argues that the original and amended charges are substantially different, and based on those differences, the statute of limitation should bar prosecution on the amended charge. Specifically, he argues that the difference between forcible rape (the original charge) and statutory rape (the charge supporting the conviction) are mutually exclusive in that: 1) forcible rape allows for the defense of consent whereas statutory rape does not; 2) the original charge left open the possibility of an alibi defense because the victim and defendant lived in different cities at the time the alleged act occurred; 3) statutory rape cannot be considered a lesser included offense of forcible rape because of its differing elements; and 4) statutory rape is a time-sensitive charge because it must occur between the time the victim is ten and sixteen years old. This analysis of legal factors supports a finding of a substantially new and different offense.

[¶ 41.] SDCL 23A–6–19 may require an analysis from a factual standpoint. SDCL 23A–6–19 permits an amendment to "amend [ ] or change the allegations regarding any offense arising out of the same alleged conduct of the defendant that gave rise to any offense alleged in the original information." Arguably, that is what was done here. However, the fatal defect in this factual analysis is that the

statute deals specifically with amending and amending to a new charge but says nothing about permitting an amendment after the statute of limitations expired on a new charge.

[¶ 42.] The State would not be entitled to charge, through an amendment to a complaint, an offense that does not arise out of the same alleged conduct that gave rise to the original information either before or after the statute of limitation expired.

[¶ 43.] Statutes of limitation are created by the Legislature and become the public policy of the State of South Dakota. Statutes of limitation serve two primary purposes; they avoid unfair proceedings against defendants caused by the use of stale evidence and encourage prompt investigation by the government in criminal cases. *United States v. Ewell*, 383 U.S. 116, 122, 86 S.Ct. 773, 777, 15 L.Ed.2d 627, 632 (1966). Here, neither purpose was fulfilled. Through the amended complaint, the evidence to support the charge was fifteen years old and despite knowledge by the State as of 1992, there was no prompt investigation of the offenses by the government.[10]

[¶ 44.] A criminal statute of limitation acts as a jurisdictional bar to prosecution. This is a limitation on the power of the State to act against an accused. *State v. Glover*, 25 Wash.App. 58, 604 P.2d 1015, 1016 (1979) (additional citations omitted). SDCL 22–22–1 provides in part that the statute of limitation on a charge of rape will expire seven years after commission of the crime or when the victim turns twenty-five years old, whichever is longer. The South Dakota Legislature has spoken on this issue and criminal statutes of limita-

tion are construed liberally in favor of the Defendant. See e.g., *State v. Hirsch*, 245 Neb. 31, 43, 511 N.W.2d 69, 78 (1994) (additional citations omitted). Therefore, even though the amended complaint did not broaden the charge, it substantially amended it to the prejudice of the Defendant.

[¶ 45.] We should not accept the State's argument that the mere filing of the criminal complaint tolled the statute of limitation without exception. See e.g., SDCL 23A–8–11 (providing in part that although an order regarding a defect in an indictment or information is not a bar to subsequent prosecution on the same charge, the order will not affect the provisions of "any statute relating to periods of limitation"). When an amendment to a charging document affects the substantive rights of the accused, courts must inquire into the sufficiency of the document. See generally, *Schmick*, 904 F.2d at 940; *Elliott*, 849 F.2d at 561; *Friedman*, 649 F.2d at 203; *Grady*, 544 F.2d at 601; *Almeda*, 560 A.2d at 392; *Benitez*, 904 P.2d at 1037. The changes to this criminal complaint were not mere changes in form. The record reveals that at the time the State filed the original complaint, it was based on the mistaken belief that Defendant committed forcible rape against J.C. in 1995. Changing the date to 1986 and the offense to statutory rape were substantive changes requiring that the Defendant be entitled to a new preliminary hearing according to SDCL 23A–6–19. The fact that he was entitled to a new preliminary hearing gives credence to Defendant's argument that the amended complaint alleged a new and different offense for which the State should have been required to file a new complaint.

10. Defendant's alleged misconduct against this victim and C.O. was initially reported by their parents to the Department of Social Services and the State's Attorney in 1993, eight years before the statute of limitation expired and eight years before the State's Attorney eventually took action on the case in April, 2001.

Had the State filed a new complaint, clearly it would have been barred by the statute of limitation. Thus, the act of amending the original complaint could not operate to extend the statute of limitation and preserve the untimely prosecution on this charge. Defendant was prejudiced by being prosecuted on a crime that was jurisdictionally barred.

[¶ 46.] We have held that the State may amend an indictment when the amendment does not surprise, prejudice, or have an effect on the defendant's substantial rights. *State v. Timperley*, 1999 SD 75, ¶¶ 8–9, 599 N.W.2d 866, 867–868. Furthermore, a charging document should advise the defendant of the charge with reasonable sufficiency, cite the appropriate statute and subsection and contain the material elements of the offense. See generally, *State v. Boutchee*, 406 N.W.2d 708 (S.D.1987). The amendment to this complaint does not overcome the barriers erected for the protection of defendants by our laws of criminal procedure as enacted by the South Dakota Legislature. Those barriers operate to ensure that defendants only face timely charges. They should not be circumvented so easily. Because the Defendant was tried and convicted of a crime upon which the statute of limitation expired, his substantial rights were prejudiced. The amendments to the complaint were substantial and the court was divested of jurisdiction over this Defendant as to this charge. The conviction should be reversed.

[¶ 47.] I dissent on Issue 2 also because the other act evidence received under SDCL 19–12–5 (Rule 404(b)) was clearly offered to prove bad character and was substantially outweighed by its prejudicial effect. Once that evidence was offered and received, Defendant had little chance for a fair trial. The majority opinion relies heavily on the claim that this "other act evidence" was offered only as evidence of the Defendant's common scheme or plan, motive and intent, continuing course of conduct and identity. None of these factors were really in issue and are more pretextual than real. I submit that the State will continue to use this "laundry list" as long as the trial courts and this Court accept the same. This practice prevents meaningful review of the issues and permits highly prejudicial evidence to be admitted with no clear showing of its probative value. In light of the judiciary's duty to provide fair criminal trials, this Court should require the State to stop this practice now.

[¶ 48.] To say this laundry list of "bad acts" and its probative value was not substantially outweighed by its prejudicial effect is a real stretch and also prevents meaningful review. The exceptions to SDCL 19–12–5 continue to swallow the rule. For these and the reasons I have stated in my previous writings on this issue, I dissent. See e.g. *State v. Wright*, 1999 SD 50, 593 N.W.2d 792 (Sabers, J., dissenting); *State v. Loftus*, 1997 SD 94, 566 N.W.2d 825; *State v. Werner*, 482 N.W.2d 286 (S.D.1992).

[¶ 49.] MEIERHENRY, Justice, joins this dissent.