UNITED STATES of America,
Plaintiff-Appellee,

v.

Ronald Benton ELLIOTT,
Defendant-Appellant.

No. 86–8884.

United States Court of Appeals,
Eleventh Circuit.

July 14, 1988.

Herbert Moncier, Ann C. Short, Knoxville, Tenn., Bruce Fleisher, Coral Gables, Fla., for defendant-appellant.

William P. Gaffney, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before RONEY, Chief Judge, JOHNSON, Circuit Judge, and PECK[*], Senior Circuit Judge.

RONEY, Chief Judge:

Defendant, Ronald Benton Elliott, was one of twelve people originally indicted in 1983 for narcotics related offenses. A five-count superseding indictment was returned on April 2, 1986, charging Elliott with: (1) importation of marijuana, (2) travel in interstate commerce to facilitate unlawful activity, (3) distribution and possession with intent to distribute marijuana, (4) conspiracy to import marijuana, and (5) conspiracy to distribute and possess with intent to distribute marijuana. Elliott had operated a marijuana-smuggling organization, whose base of operation was located in the Bahamas. Elliott's organization flew planeloads of marijuana primarily into south Florida. Elliott pled not guilty. Tony Chester, one of the people originally indicted along with Elliott in 1983, cooperated with the Government and testified against Elliott regarding these smuggling operations. Elliott was convicted by a jury on all five counts on July 29, 1986. We affirm.

## 1. SPEEDY TRIAL

Elliott argues that pretrial delay violated his Sixth Amendment right to a speedy trial and also the Speedy Trial Act, 18 U.S.C.A. § 3161 *et seq.* We affirm the district court's denial of Elliott's speedy trial motions for the reasons stated in that court's order.

## 2. GOVERNMENTAL MISCONDUCT

Elliott argues that the Government presented fabricated documents to the grand jury; that Government attorneys abused the court's subpoena power; and that there were egregious violations of Fed.R.Crim.P. 6(e) which resulted in abuses of the grand jury secrecy rule. We disagree.

At the Government's prompting, Ms. Bickerton, a public accountant formerly associated with T. Lamar Chester, fabricated documents to be included among those in her possession subpoenaed by a Houston grand jury to be presented to an Atlanta grand jury. The fabrication was arranged by Government agents in their effort to uncover a suspected obstruction of justice by Chester and two lawyers. The plan ultimately failed, and the fabricated documents were misplaced along with other genuine documents. The magistrate's report and recommendation included a finding that no fabricated documents were presented to the indicting grand jury. The district court adopted this finding upon a *de novo* review of the record. This finding is not clearly erroneous.

Elliott argues that the district court's grand jury subpoena power was abused because it was used by the Government as a pretext for investigative purposes to interview suspects, and not solely for grand jury purposes. That a subpoenaed individual is not ultimately called before the grand jury does not result in a *per se* violation of a court's subpoena power. As a practical matter, the United States Attorney is allowed considerable leeway in attempting to prepare for a grand jury investigation. *United States v. Santucci*, 674 F.2d 624, 632 (7th Cir.1982), *cert. denied*, 459 U.S. 1109, 103 S.Ct. 737, 74 L.Ed.

* Honorable John W. Peck, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designa-

tion.

2d 959 (1983). The United States Attorney must regularly interview witnesses prior to appearances before the grand jury to ensure that grand jurors are not burdened with duplicate information. The court's subpoena power may not, however, be used by the United States Attorney's office as part of its own investigative process. *United States v. DiGilio,* 538 F.2d 972, 985 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 733, 50 L.Ed.2d 749 (1977). Courts necessarily play a limited role regarding grand jury proceedings given the role of the United States Attorney and the broad power inherent in the grand jury.

A review of the grand jury testimony and records does not show an encroachment by the Government on the court's subpoena power that would compel court interference. Only by the exercise of this Court's general supervisory power to protect the integrity of the judicial process could some relief be afforded Elliott on this point. On this record, we find no reason to exercise that power. *See Bank of Nova Scotia v. United States,* —— U.S. ——, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988) (court should not invoke its supervisory power to dismiss an indictment for prosecutorial misconduct in a grand jury investigation where misconduct does not prejudice the defendant).

The record reflects some probable misconduct by some Government lawyers. The district court, however, carefully considered the allegations of violations of grand jury secrecy and concluded that Elliott did not establish sufficient prejudice to warrant dismissal of the indictment. The district court found that the magistrate had given Elliott a fair hearing, and was within his discretion in denying defendant's motion for production of grand jury records. We agree.

The controlling standard for our purposes is a straightforward one:

> Parties seeking grand jury transcripts under rule 6(e) must show that the matter they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy,

and that their request is structured to cover only material so needed. Such a showing must be made even when the grand jury whose transcripts are sought has concluded its operations.

*Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 222, 99 S.Ct. 1667, 1675, 60 L.Ed.2d 156 (1979) (footnote omitted). A defendant's effort to obtain grand jury materials can only succeed with a showing of "particularized need." *United States v. Procter & Gamble Co.,* 356 U.S. 677, 683, 78 S.Ct. 983, 987, 2 L.Ed.2d 1077 (1958). The decision to disclose grand jury proceedings is a matter within the district court's discretion. *United States v. Benton,* 637 F.2d 1052, 1059 (5th Cir. Unit B 1981). Particularized need is not shown by a general allegation that grand jury materials are necessary for the preparation of a motion to dismiss. *See Thomas v. United States,* 597 F.2d 656, 658 (8th Cir.1979). *See also United States v. Sells Eng'g Inc.,* 463 U.S. 418, 445, 103 S.Ct. 3133, 3149, 77 L.Ed.2d 743 (1983) (rational relationship to alleged claims is insufficient to constitute particularized need); *United States v. Cole,* 755 F.2d 748, 759 (11th Cir.1985) (unsubstantiated allegations do not satisfy particularized need standard).

The district court found that Elliott failed to show particularized need. Without this showing, Elliott is not entitled to grand jury materials, nor can we require those materials to be revealed. *United States v. Liuzzo,* 739 F.2d 541, 545 (11th Cir.1984). The district court's finding on this issue is not clearly erroneous. The magistrate and district court reviewed extensively the Rule 6(e) issues in the case, as evidenced by the magistrate's order denying Elliott's motion for production of grand jury records, the magistrate's report and recommendation on Elliott's motion to dismiss the indictment, and the district court's affirming order.

Among other things, the district court found: *First,* that the serious prejudice asserted by defendant was undermined by his year and a half delay before appealing the magistrate's denial. *Second,* that the magistrate's finding that the requisite par-

ticularized need had not been shown was not clearly erroneous. The only allegation found to approach particularized need was the allegation of fabricated documents, as to which the district court found that none came before the grand jury. *Third*, that defendant made no attempt to particularize his sweeping request for grand jury records. *Fourth*, that, as to the transfer orders and letters, neither a showing of particularized need nor an explanation of how disclosure would assist in establishing government misconduct before the indicting grand jury. *Fifth*, that, adopting the magistrate's finding, the Houston and Atlanta grand jury investigations were not a single, joint investigation of the same individuals and transactions. *Sixth*, that the majority of the alleged violations occurred in relation to the Houston grand jury investigation with little or no impact on the Atlanta grand jury investigation. *Seventh*, that defendant had not shown that any conduct, in Houston or Atlanta, had prejudiced his rights or ability to make a defense in this case. *See* Order of March 31, 1986.

Elliott has the burden of showing that the requested materials covered only the particularized need. *Douglas Oil*, 441 U.S. at 222, 99 S.Ct. at 1675. Here, the district court found that Elliott made no attempt to limit or particularize his broad request for all grand jury records, or show how disclosure would assist him in establishing governmental misconduct before the indicting jury. These findings are not clearly erroneous. Elliott must "show that these circumstances had created certain difficulties peculiar to this case, which could be alleviated by access to *specific* grand jury materials, without doing disproportionate harm to the salutary purpose of secrecy embodied in the grand jury process in order to justify a district court's order of the production of grand jury documents." *Liuzzo*, 739 F.2d at 545. This he has not done.

### 3. OTHER CRIME EVIDENCE.

■ Elliott challenges the admission of testimony from two convicted drug smugglers concerning certain smuggling operations in the Bahamas in which Elliott was involved, but which were not charged in this indictment. *See* Fed.R.Evid. 404(b). Elliott contends that the district court allowed 404(b) evidence solely to prove identity, and that "a much greater degree of similarity between the charged crime and the uncharged crime is required when evidence of the other crime is introduced to prove identity." *United States v. Beechum*, 582 F.2d 898, 912 n. 15 (5th Cir.1978) (*in banc*) (quoting *United States v. Myers*, 550 F.2d 1036, 1045 (5th Cir.1977)), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). Such evidence may not be used to prove the bad character of the defendant. The decision to admit extrinsic evidence rests within the sound discretion of the trial judge, and absent a showing of a clear abuse of that discretion, the decision will not be disturbed on appeal. The test for admissability is whether the evidence is relevant to an issue other than defendant's character and whether its probative value is outweighed by its improper prejudicial effect as character evidence. *United States v. Williford*, 764 F.2d 1493, 1497 (11th Cir.1985). A review of the record reveals that the district court carefully limited the 404(b) evidence by setting forth proper guidelines. The testimony admittedly fell within the limiting guidelines set by the district court. The evidence was probative of motive and intent, as well as identity. Contrary to defendant's arguments, these elements were placed in issue by virtue of Elliott's not-guilty plea and by the very nature of the conspiracy charge against him. *See United States v. Nahoom*, 791 F.2d 841, 845 (11th Cir.1986). *See also United States v. Hitsman*, 604 F.2d 443, 448 (5th Cir.1979) (evidence of prior drug dealings highly probative of intent to distribute a controlled substance, as well as conspiracy). The district court properly decided that the probative value outweighed any improper prejudicial effect of the evidence.

■ Contrary to Elliott's argument, the district court's general charge to the jury that such evidence may be admissible for 404(b) purposes other than identity was not error. Once evidence is properly admitted for any 404(b) purpose, it can be considered

by the jury for any other proper 404(b) purpose to which it is relevant. *See United States v. Provenzano*, 620 F.2d 985, 993 (3d Cir.), *cert. denied*, 449 U.S. 899, 101 S.Ct. 267, 66 L.Ed.2d 129 (1980); *United States v. Billups*, 522 F.Supp. 935, 955 (E.D.Va.1981) (court can admit 404(b) evidence for one purpose or many, and its admissability can be upheld if it was proper for any purpose), *aff'd.*, 692 F.2d 320 (4th Cir.1982).

## 4. EXTRINSIC EVIDENCE

■ Elliott challenges the admission of evidence regarding another smuggling organization operated by Tony Chester, the Government's chief witness, which related to amounts and types of narcotics not associated with Elliott. Specifically, Chester was questioned about his own smuggling operations in the Darby Islands, none of which involved Elliott, and which included large amounts of cocaine and Columbian marijuana, as opposed to Jamaican marijuana. The testimony regarding Chester's smuggling operations was inextricably intertwined with the evidence about the Jamaican marijuana for which Elliott was charged, and was necessary to present an adequate account of the circumstances surrounding the charged offense. Chester's testimony served as an appropriate background with which the jury could place into context Elliott's solicitation for assistance from Chester to ship his own Jamaican marijuana, as alleged in the indictment. *See United States v. Weeks*, 716 F.2d 830, 832 (11th Cir.1983). Since it was during defense counsel's cross-examination of Chester that testimony was first elicited surrounding a cocaine shipment, the trial court was correct in allowing the Government to go into the cocaine transaction on redirect to clarify what was elicited on cross-examination. *See United States v. Johnson*, 730 F.2d 683, 691 (11th Cir.) (inadmissible extrinsic evidence is admissible on re-direct as rebuttal evidence where defense counsel opens the door to such evidence on cross-examination), *cert. denied*, 469 U.S. 857, 105 S.Ct. 186, 83 L.Ed.2d 119 (1984). There was no abuse of discretion.

## 5. INVOCATION OF PRIVILEGE BEFORE JURY.

■ At one point in the trial, the prosecutor poorly handled a situation which caused a witness, Tony Chester, to invoke a privilege not to answer a question asked of him, in the presence of the jury. The district court denied Elliott's motion for mistrial after this incident occurred and then instructed the prosecutor that this sort of refusal should be elicited out of the jury's presence. The decision not to grant a mistrial lies within the discretion of the trial court. *United States v. Brooks*, 670 F.2d 148, 152 (11th Cir.), *cert. denied*, 457 U.S. 1124, 102 S.Ct. 2943, 73 L.Ed.2d 1339 (1982). Apparently, the prosecutor knew of the intention on the part of the witness to invoke a privilege before the witness was called to the stand. Since "[i]t is impermissibly prejudicial for the Government to attempt to influence the jury by calling a witness it knows will invoke the Fifth Amendment," careful scrutiny is required. *Beechum*, 582 F.2d at 908.

Upon careful review of the record, however, we are satisfied that there was no reversible error and that the denial of the motion for mistrial was not an abuse of discretion. On the first day of trial, Chester testified about his 1980 arrest and conviction. It was in response to a question asking Chester to explain the relationship between his conviction and the federal investigation he cooperated in that he refused to answer. When asked if he was "invoking a privilege," Chester responded, "yes." The jury was thereafter immediately excused and the situation resolved out of their presence. The district court determined that given the context of the invocation and the jury's lack of knowledge as to what was taking place at the time the question was asked, the prosecutor's conduct did not amount to reversible error such that a mistrial had to be declared. Chester subsequently testified the next day under a grant of immunity.

This is very unlike the situation in *United States v. Ritz*, 548 F.2d 510, 518–21 (5th Cir.1977), where there was no basis found

by this Court for the Government calling the witness except to have the jury draw negative inferences from the witness's refusal to answer the question. Elliott was not prevented from cross-examining Chester, since Chester later testified under governmental immunity, subject to cross-examination, giving Elliott the opportunity "to dispel any inferences that the jury may well have drawn from the claiming of the privilege by [Chester]." *Ritz*, 548 F.2d at 520. *Cf. United States v. Hiss*, 185 F.2d 822, 832 (2d Cir.1950) (no reversible error where invocation of privilege by witness is no more than a minor lapse through a long trial), *cert. denied*, 340 U.S. 948, 71 S.Ct. 532, 95 L.Ed. 683 (1951).

## 6. ADMISSION OF DOCUMENTARY EVIDENCE

■ The trial court admitted into evidence an address book, some handwritten notes, a hotel printout of a statement of account, and hotel guest registration form. The address book and notes were seized from Tony Chester in 1980 from his residence upon his arrest. The address book, hotel guest registration form, and printed statement of account in the name of "B. Elliott," were admitted without objection. The handwritten notes were all part of a composite Government exhibit. Most of the documents in this composite were admitted without objection. At one point, Elliott made what could be considered a general objection to all documents in the composite as to their accuracy. There was no objection made as to authenticity. Elliott, based on questions from the trial judge, assumes they were admitted under Fed.R.Evid. 803(6) as documents made while Chester was carrying on his drug business. *See United States v. Foster*, 711 F.2d 871, 883 (9th Cir.1983). Elliott contends they were improperly admitted for this purpose.

The Court has carefully reviewed the transcripts from the trial where each item in this composite was admitted, and finds no error. The hotel forms were admitted as business records of a hotel. It is not at all clear under what theory any of the other documents were admitted. Where there was an objection, however, defense counsel was permitted *voir dire*, after which the item was properly admitted by the trial judge.

The trial court did not abuse its discretion in admitting any of these items, and there is nothing in the record to justify a finding of plain error. Fed.R.Crim.P. 52(b); *United States v. Dennis*, 786 F.2d 1029, 1042 (11th Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 1973, 95 L.Ed.2d 814 (1987). Contrary to Elliott's assertions, the later reference by the Government to the hotel registration form and printed statement of account during closing argument was not misleading or prejudicial. Sufficient and reliable circumstantial evidence was elicited which connected Elliott with "B. Elliott," the name on the statement of account, and who Tony Chester testified was Elliott's brother.

## 7. FAILURE TO RECORD CHARGE CONFERENCE.

■ Elliott assigns as error the failure to record the jury instruction conference. No objection was made to its not being recorded, nor was there a request made to have it recorded. The actual charge, as well as any exceptions thereto were, however, taken in open court, recorded, transcribed, and made part of the record. Thus, while the conference itself was not recorded, Elliott was not precluded on appeal from raising any objections to the charges as actually given. Under these circumstances, there is no merit to the contention that the failure to record this conference amounts to a "substantial and significant omission in the transcript." *United States v. Taylor*, 607 F.2d 153, 154 (5th Cir.1979). *See also United States v. Stefan*, 784 F.2d 1093, 1102 (11th Cir.) (failure to record one hour and forty-five-minute bench conference does not amount to a substantial and significant omission, even though new counsel was employed on appeal), *cert. denied*, — U.S. —, 107 S.Ct. 650, 93 L.Ed.2d 706 (1986).

## 8. PINKERTON INSTRUCTION.

The trial court gave a standard *Pinkerton* instruction that allowed the jury to find that Elliott, by virtue of his membership in the conspiracy, was liable for the substantive offenses committed by his co-conspirators during the course of and in furtherance of the conspiracy. *See Pinkerton v. United States,* 328 U.S. 640, 645–48, 66 S.Ct. 1180, 1183–84, 90 L.Ed. 1489 (1946). Elliott argues this was error: *first,* because he had no advance knowledge that the jury would be permitted to consider the *Pinkerton* theory of vicarious liability, and *second,* because the charge as given was unclear and inadequate in several respects. No objection was made to this instruction. Since on proper objection the court could have corrected the alleged inadequacy in the charge, the situation presents the clear case of where the defendant cannot object on appeal, absent plain error. Fed.R.Crim. P. 52(b). There was no plain error, if any error at all. A standard conspiracy charge contains the elements of a *Pinkerton* charge and the defendant knew the court was considering giving the charge, and the charge was appropriate under the facts, so there was no reversible error just because the defendant did not know it would be given.

## 9. VOIR DIRE.

Elliott challenges the district court's treatment of *voir dire,* arguing that it did not create reasonable assurances that prejudice would be discovered, and also that certain statements by two prospective jurors, who were subsequently discharged, relating to their profound distaste for drug smugglers and drugs in general, reflected potential actual prejudice among the remainder of the juror pool, requiring the district court to conduct further inquiry. The district court's conduct during *voir dire* under Fed.R.Crim.P. 24(a) will not be disturbed absent a showing of an abuse of discretion. *United States v. Holman,* 680 F.2d 1340, 1347–48 (11th Cir.1982). A bias or prejudice towards a particular crime does not necessarily lead to potential actual prejudice against an accused. *United*

*States v. Tegzes,* 715 F.2d 505, 507 (11th Cir.1983). Given the fact that the two jurors were subsequently discharged, after being questioned further outside the presence of the remainder of the juror pool, it was not an abuse of discretion not to conduct additional *voir dire* of the panel. *Accord Dennis* 786 F.2d at 1044.

## 10. STATUTE OF LIMITATIONS

Elliott argues that the superseding indictment upon which he was convicted was barred by the statute of limitations, because it broadened or substantially amended the charges in the original indictment. The return of a timely indictment tolls the statute of limitations as to the charges alleged therein. *United States v. Edwards,* 777 F.2d 644, 647 (11th Cir.1985), *cert. denied,* 475 U.S. 1123, 106 S.Ct. 1644, 90 L.Ed.2d 189 (1986). A superseding indictment brought while the original indictment is validly pending will not be barred by the statute of limitations unless it broadens or substantially amends the charges made in the first indictment. *United States v. Grady,* 544 F.2d 598, 601–02 (2d Cir.1976). The potential for imposition of a greater penalty under a superseding indictment does not render such charges broader than those in the original indictment. *United States v. Sears, Roebuck & Co., Inc.,* 785 F.2d 777, 779 (9th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 580, 93 L.Ed.2d 583 (1986). A careful review of the two indictments shows they are virtually identical except for additional underlying facts relating to the transportation of marijuana and changes in some time periods and amounts of marijuana involved. The ultimate acts charged are the same in both indictments.

## 11. SUFFICIENCY OF EVIDENCE.

Elliott's claim of insufficient evidence is not supported by the record, and would normally be rejected under our Circuit Rule 36–1.

AFFIRMED.