[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-14953
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 23, 2010
JOHN LEY
CLERK

D. C. Docket No. 09-60086-CR-WPD

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GREGORY VALERE,
REGINALD JEAN,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(July 23, 2010)

Before HULL, PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Reginald Jean appeals his sentence of 27 months of imprisonment for identity theft, and Gregory Valere appeals his conviction for the same offense. 18 U.S.C §§ 2, 1028(a)(7), 1028(c)(3)(A). Jean challenges the calculation of his advisory guideline range and reasonableness of his sentence, and Valere challenges the admission of testimony and the jury's verdict. We affirm.

## I. BACKGROUND

Postal inspectors arrested Jean Duchatelier after he had used stolen identity documents to obtain student loans. Duchatelier was charged with fraud, and he negotiated a plea agreement. To reduce his sentence, Duchatelier agreed to aid in similar investigations.

After his plea, Dutchatelier was approached by a longtime friend, Valere, and Valere's friend, Jean, who sought assistance in obtaining fraudulent student loans. The three men agreed that Valere would provide Duchatelier with credit reports, driver's licenses, and social security numbers, and Duchatelier would apply for the loans. The three men also agreed to share the proceeds of 4 loans totaling $400,000.

Postal inspectors recorded telephone calls in which Duchatelier, Valere, and Jean planned their fraud. Valere told Duchatelier about obtaining some financial documents, and the two arranged to transfer the documents at a McDonald's

2

restaurant. Postal inspectors wired Duchatelier with a microphone and the inspectors videotaped the meeting. During the meeting, Jean walked to his Land Rover vehicle and returned to the restaurant carrying a file folder. The postal inspectors listened to Duchatelier, Valere, and Jean discuss credit and identification documents belonging to a man and a woman. Valere said that he would obtain additional documents from a friend.

A month later, Duchatelier collected more documents from Jean at Valere's house. After that meeting, postal investigators inspected the documents, which included copies of driver's licenses and credit reports in the name of Diana Rivas and Harry LeGuerre and a copy of LeGuerre's social security card. Duchatelier later obtained financial information about Jacques Phillipe from Serge Dazile, a friend of Valere.

Duchatelier prepared student loan applications in the name of LeGuerre and Phillipe. The postal inspector's office intercepted the applications and issued four bogus checks. Two checks totaling $65,000 were made payable to Phillipe and delivered to a house occupied by Jean, and two checks were made payable to LeGuerre and delivered to a vacant house.

Postal inspectors arrested Valere when he retrieved the checks made payable to LeGuerre, and postal inspectors arrested Jean when he retrieved the checks made

payable to Phillipe. Jean consented to a search of the house and his vehicle. Inside the vehicle, inspectors discovered a folder containing credit reports about Diana Rivas and two other women. In the house, inspectors discovered a dry erase board listing financial information about several persons, including Phillipe, LeGuerre, and Rivas.

Valere and Jean each were indicted for three counts of identity theft. 18 U.S.C. §§ 2, 1028(a)(7), 1028(c)(3)(A). The men were charged with "knowingly transfer[ring], possess[ing], and us[ing], without lawful authority" the names, dates of birth, social security numbers, and addresses of Rivas, Phillipe, and LeGuerre. Valere and Jean pleaded not guilty to the crimes.

At trial, the government presented testimony from postal inspectors about their investigations and arrests of Valere and Jean. Victims Rivas and LeGuerre testified that they did not apply for student loans or know Valere or Jean. Rivas testified that in 2008 she had given her personal information to two mortgage brokers to obtain a loan, and LeGuerre testified he had given personal information to Billy Grant to obtain a line of credit.

Duchatelier testified about his participation in the sting operation and his relationship with Valere. Duchatelier testified that he had disclosed that he"live[d] off fraud, checks and mortgage" to Valere, and Valere moved for a mistrial.

4

Valere argued that Duchatelier's testimony violated a ruling in limine that prohibited the government from introducing evidence of prior bad acts between Valere and Duchatelier, but the district court denied the motion. On cross-examination, defense counsel questioned Duchatelier repeatedly about his "luck" in being approached by Valere, and Duchatelier explained that Valere "[came] . . . for one purpose" because the two had "do [ne] business in the past." After Duchatelier explained on redirect examination that he had been solicited by Valere "[b]ecause one time he came to me to do something for him," Valere renewed his motion for a mistrial. The district court denied the motion on the ground that Valere had opened the door to the "inextricably intertwined" evidence by cross-examining Duchatelier about his "luck" in being solicited by Valere.

Valere also moved for a mistrial on the ground that Duchatelier had improperly commented on Valere's right to remain silent. During cross-examination, defense counsel had asked why Valere would solicit Duchatelier's assistance, and Duchatelier had responded, "Why don't you ask him?" The district court denied Valere's motion and ruled that Duchatelier's remark had not "vitiated the fairness of [the] trial." The district court granted Valere's request for a curative instruction and "remind[ed] [the jury] that the defendants have no obligation or burden at all, other than being here and behaving."

5

After the government rested its case, Valere moved for a judgment of acquittal for stealing Phillips's identity documents. The government voiced "no objection," and the district court granted the motion "as to both defendants." Valere and Jean next moved for judgments of acquittal for stealing identity documents of Rivas and LeGuerre, but the district court denied those motions.

Valere testified and denied any wrongdoing. Valere testified that he telephoned Duchatelier about purchasing a car, after which Duchatelier telephoned Valere repeatedly to solicit lines of credit. Valere testified that Billy Grant gave Valere personal information for Rivas, LeGuerre, and Phillipe to obtain lines of credit, and Valere gave the information to Duchatelier with the expectation of receiving a commission. Valere testified that he received Rivas's identity documents more than once and, on one occasion, by email. Valere introduced a copy of an email forwarded by Grant from a third individual with attachments containing Rivas's social security number and a copy of Rivas's driver's license. Valere also presented testimony from Serge Dazile, a mortgage broker, who testified that he had attempted to help his client, Phillipe, obtain a line of credit by transferring Phillipe's financial information to Valere.

After Valere rested his case, Jean rested his case without presenting any evidence. Both men renewed their motions for judgment of acquittal, which the

6

district court denied. The jury found Valere and Jean guilty of the identity theft of Rivas, but the jury acquitted Valere and Jean of the identity theft of LeGuerre.

Valere moved for a new trial on three grounds. Valere argued that the jury's verdicts were inconsistent; Duchatelier's testimony about his past affiliation with Valere violated the ruling in limine of the district court; and Duchatelier had commented on Valere's right to remain silent. The district court denied the motion.

Both Jean's and Valere's presentence investigation reports listed a base offense level of 6, United States Sentencing Guideline § 2B1.1(a)(2) (Nov. 2008), and increased that level by 2 points for the unauthorized transfer or use of any means of identification to obtain another means of identification, id. § 2B1.1(b)(10)(C)(i). The reports also increased Jean's and Valere's offense levels by 14 points because the intended loss was greater than $400,000 and less than one million dollars. Id. § 2B1.1(b)(1)(H). With criminal histories of I, the reports provided advisory guideline ranges for Jean and Valere of 41 to 51 months of imprisonment.

Valere and Jean objected to the amount of loss. They argued that evidence about the alleged identity fraud of Phillipe and LeGuerre was "speculative at best" and should not be included in calculating the amount of loss. Valere and Jean also

argued that their offense levels should not be enhanced for any loss amount because the government failed to produce sufficient evidence about an actual loss amount, the checks issued were bogus, and they did not request checks of a specific amount or see the amounts of the bogus checks.

At Valere's sentencing hearing, the district court calculated the amount of loss based on the theft of Rivas's identity documents. The government agreed that the theft amounted to $50,000, and the district court added 6 points to Valere's offense level. U.S.S.G. § 2B1.1(b)(1)(D). The district court sentenced Valere to 21 months of imprisonment.

At Jean's sentencing hearing, the district court calculated the amount of loss based on the stolen identity of Rivas and two other women whose credit reports had been discovered in Jean's vehicle. Jean argued that increasing the loss amount based on the two other credit reports would result in a sentencing disparity. The district court found that Jean's possession of additional credit reports established that Jean intended to commit other acts of fraud. The district court calculated the loss amount as greater than $120,000, and increased Jean's offense level by 10 points, id. § 2B1.1(b)(1)(F), which resulted in an advisory guideline range of 27 to 33 months of imprisonment. The district court sentenced Jean to 27 months of imprisonment. The district court stated that it sentenced Jean at the low end of the

guideline range "to reduce any perception of disparity" because, "[b]ut for the sentence . . . given [to] Mr. Valere," the court "would have given Mr. Jean the top end of the guidelines today."

## II. STANDARDS OF REVIEW

We apply three standards of review to Jean's challenges of his sentence. We review <u>de novo</u> the application of the sentencing guidelines and examine related findings of fact for clear error. <u>United States v. Humber</u>, 255 F.3d 1308, 1311 (11th Cir. 2001). We review the reasonableness of a criminal sentence for an abuse of discretion. <u>Gall v. United States</u>, 552 U.S. 38, 49–50, 128 S. Ct. 586, 596–97 (2007); <u>United States v. Gonzalez</u>, 550 F.3d 1319, 1323 (11th Cir. 2008). Because that standard is deferential, "when the district court imposes a sentence within the advisory Guidelines range, we ordinarily will expect that choice to be a reasonable one." <u>United States v. Talley</u>, 431 F.3d 784, 788 (11th Cir. 2005).

Valere challenges the denial of his motion for a new trial, which we review for abuse of discretion. <u>See</u> <u>United States v. Campa</u>, 459 F.3d 1121, 1151 (11th Cir. 2006).

## III. DISCUSSION

Jean presents two arguments about his sentence, and Valere presents three arguments about the admission of testimony and allegedly inconsistent verdicts by

the jury.  All fail.  We address each issue in turn.

### A. The District Court Correctly Calculated Jean's Offense Level.

Jean argues that his offense level should not have been increased for a loss amount attributable to two additional victims, but we disagree.  The Sentencing Guidelines "instruct[] district courts to consider not merely the charged conduct, but rather all 'relevant conduct,' in calculating a defendant's offense level." United States v. Hamaker, 455 F.3d 1316, 1336 (11th Cir. 2006).  Relevant conduct encompasses "uncharged and acquitted conduct."  Id.  The government proved that Jean stole the identity of other persons to apply for fraudulent loans, and the district court was entitled to conclude that Jean intended to similarly misuse information in two credit reports that had been discovered in Jean's vehicle. The reports contained information about two women who later told investigators they had not applied for student loans although their reports were marked to be used for that purpose.  The reports had been stored with Rivas's credit reports.  The district court did not err by increasing Jean's offense level.

### B. Jean's Sentence is Reasonable.

Jean argues that his sentence is unreasonable because he received a greater sentence than Valere, but we disagree.  Jean is not similarly situated to Valere. The district court did not abuse its discretion by sentencing Jean at the low end of

the guideline range.

### C. Duchatelier Did Not Refer to Valere's Right of Silence.

Valere argues that he was entitled to a new trial because Duchatelier referred to Valere's right to remain silent, but this argument fails. Valere's "claim of 'silence' is misleading" because he testified about his innocence, see United States v. Guerra, 293 F.3d 1279, 1289 (11th Cir. 2002), and Duchatelier's remark did not "cause [Valere] to take the stand and deprive him of his right to remain silent." Moreover, a reasonable juror would not have construed Duchatelier's remark as a comment on Valere's silence. See id. Defense counsel inquired why Valere would "want to commit the same crime that [Duchatelier] [was] being prosecuted for," to which Duchatelier responded that Valere could best answer that question. Any error also would have been eradicated by the instruction that Valere had "no obligation or burden at all." See id. The district court did not abuse its discretion by denying Valere's motion for a new trial based on Duchatelier's remark.

### D. Duchatelier's Testimony About His Relationship With Valere Was Admissible.

Valere argues that Duchatelier's testimony about their past affiliation was inadmissible under Federal Rule of Evidence 404(b), but we disagree. "Evidence of criminal activity other than the charged offense is not considered extrinsic within the proscription of Rule 404(b) . . . if it was inextricably intertwined with

11

the evidence regarding the charged offense." United States v. Weeks, 716 F.2d 830, 832 (11th Cir. 1983). Evidence is "inextricably intertwined" when it "'pertain[s] to the chain of events explaining the context, motive and set-up of the crime, [and] is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury.'" United States v. McLean, 138 F.3d 1398, 1403 (11th Cir. 1998) (quoting United States v. Williford, 764 F.2d 1493, 1499 (11th Cir. 1985)).

Duchatelier's testimony about his history with Valere was inextricably intertwined to the charges against Valere. Duchatelier's testimony on direct examination about disclosing his criminal background to Valere explained why Valere sought Duchatelier's assistance in applying for fraudulent student loans. See United States v. Elliott, 849 F.2d 554, 559 (11th Cir. 1988). When defense counsel suggested on cross-examination that Duchatelier had duped Valere, counsel opened the door for Duchatelier to explain on redirect examination that Valere was a willing participant in the fraud. See id. The district court did not abuse its discretion by denying Valere a new trial based on Duchatelier's testimony.

12

*E. We Do Not Review Any Inconsistency in the Jury's Verdicts.*

Valere insists that his conviction for misusing Rivas's identity documents is inconsistent with his acquittal for similar charges involving victim LaGuerre, but his conviction is not subject to attack on this ground. Because "'[c]onsistency in the verdict is not necessary," Dunn v. United States, 284 U.S. 390, 393, 52 S. Ct. 189, 190 (1932), we limit our review to whether sufficient evidence supports Valere's conviction, see United States v. Veal, 153 F.3d 1233, 1252–53 (11th Cir. 1998). Considered in a light most favorable to the government, the evidence established that Valere obtained Rivas's driver's license and credit report and gave them to Duchatelier to apply for a fraudulent student loan, which affected interstate commerce. 18 U.S.C. § 1028(a)(7). When Valere testified, he ran the risk that the jury would discredit his version of events and consider his testimony as substantive evidence of his guilt. See United States v. Brown, 53 F.3d 312, 314 (11th Cir. 1995). The district court did not abuse its discretion by refusing to reweigh the evidence against Valere.

## IV. CONCLUSION

We **AFFIRM** Jean's sentence and Valere's conviction.