[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12174
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cr-20293-FAM-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHRISTOPHER OLIVER,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(June 29, 2016)

Before TJOFLAT, WILLIAM PRYOR, and JULIE CARNES, Circuit Judges.

PER CURIAM:

A jury convicted Defendant Christopher Oliver of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Defendant now appeals his conviction and 108-month sentence. He first argues that the district court abused its discretion by admitting evidence that he had previously possessed a firearm. Next, he contends that the district court erred by determining that his prior conviction for child neglect in Florida constituted a crime of violence under U.S.S.G. §§ 2K2.1(a)(2) and 4B1.2(a). Finally, he asserts that his sentence is substantively unreasonable. After careful review, we affirm.

## I. BACKGROUND

### A.    Factual Background

On the evening of February 15, 2014, Melvina Bennett was at her residence taking a shower when she heard gun shots. She ran out of the shower and called the police. When she looked outside, she saw Defendant sitting in a chair with a gun in his lap. She knew it was Defendant because he had been to her house previously to get tattoos. Defendant got up before the police arrived but left the gun in the chair. While the police were still at the home, Defendant returned and Bennett identified him as the individual who had had the gun. A struggle subsequently ensued between Defendant and the officers because Defendant refused to comply with the officers' instructions. Officers eventually placed Defendant under arrest. After securing Defendant, officers searched the property

and found three shell casings that investigators later determined were fired from the firearm recovered at the scene.

## B.    Procedural History

A federal grand jury subsequently issued an indictment against Defendant, charging him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  Defendant pleaded not guilty and proceeded to trial on February 23, 2015.

At trial, Bennett testified as a witness for the Government.  On cross-examination, after Bennett stated that she did not see who fired the gun on the night of the incident, the following exchange took place between defense counsel and Bennett:

[Defense Counsel]:    And besides seeing [Defendant] sitting in that chair, you never saw [Defendant] at any other time with a gun that night, correct?

[Bennett]:    Besides that night?

[Defense Counsel]:    Just when he's sitting in the chair.  Besides sitting in the chair, he wasn't walking around in your yard with a gun.  Nothing like that, right?

[Bennett]:    I remember one day he came—

[Defense Counsel]:    Ms. Bennett, listen to my question.

[Bennett]:    Well, no, no, no, no.

[Defense Counsel]:    Okay. Just that night.

3

[Bennett]:                    No.

[Defense Counsel]:      All right.   Besides him being in the chair that night, nothing else, correct?

[Bennett]:                    No. Correct.

On redirect examination, the Government asked Bennett, "Now, counsel asked you a question on cross-examination, have you ever seen the defendant with a firearm before."  Defendant objected, arguing that the question was not relevant. The Government responded that Defendant opened the door on cross-examination based on his unclear question about whether Bennett had seen Defendant with a gun before.  The district court overruled Defendant's objection "based on when the question was asked, how the question was asked, and how the witness was interrupted when that question was asked."  Bennett then responded that she had seen Defendant with a firearm before when he used to come to her house.  The jury ultimately returned a guilty verdict against Defendant.

In anticipation of sentencing, the probation officer prepared a Presentence Investigation Report ("PSR").  The PSR assigned Defendant a base offense level of 24, pursuant to U.S.S.G. § 2K2.1(a)(2) because Defendant committed the present offense after sustaining at least two felony convictions for either a crime of violence or a controlled substances offense.  Of relevance, the PSR identified a prior conviction for possession of heroin with intent to sell in 2010, and child neglect in 2006.  Defendant did not receive any enhancements or adjustments,

4

which resulted in a total offense level of 24.  Because Defendant received nine criminal history points, the PSR assigned him a criminal history category of IV. Based on a total offense level of 24 and a criminal history category of IV, the PSR calculated a guideline range of 77 to 96 months' imprisonment.

Defendant filed objections to the PSR.  Other than various factual objections, Defendant objected only to the PSR's assignment of a base offense level of 24 under § 2K2.1(a)(2), arguing that his conviction for possession with intent to sell heroin was not a qualifying predicate offense.

At sentencing, the district court overruled Defendant's objection related to whether his heroin conviction qualified as a controlled substance offense.  As a result, the district court calculated a guideline range of 77 to 96 months' imprisonment.  The Government requested a 92-month sentence in light of Defendant's reckless conduct.  After considering the 18 U.S.C. § 3553(a) factors, the district court determined that an upward variance was warranted.  The district court emphasized Defendant's prior convictions, including his child neglect conviction—which involved a minor child shooting himself in the leg with Defendant's gun—as well as Defendant's 2010 conviction for possession of 14 bags of heroin.  Consequently, the district court sentenced Defendant to 108 months' imprisonment.  Defendant reiterated his previous objections, and also objected to the upward variance.  This appeal followed.

5

## II.  DISCUSSION

### A.      Admission of Defendant's Prior Possession of a Firearm

Defendant first challenges Bennett's testimony on redirect examination that she had previously seen Defendant with a firearm.  Defendant argues that the district court violated Federal Rule of Evidence 404(b) by admitting this testimony.  In particular, he asserts that he did not open the door to the introduction of such evidence, nor was he given notice of this prejudicial evidence.

We review the district court's evidentiary rulings for an abuse of discretion. *United States v. Barsoum*, 763 F.3d 1321, 1338 (11th Cir. 2014).  We have stated that inadmissible extrinsic evidence becomes admissible on redirect examination where defense counsel "opens the door" to the evidence during cross-examination. *United States v. West*, 898 F.2d 1493, 1500 (11th Cir. 1990).  The Government may elicit testimony on redirect that clarifies issues to which the defense has opened the door on cross-examination.  *United States v. Elliott*, 849 F.2d 554, 559 (11th Cir. 1988).

The district court did not abuse its discretion when it determined that Defendant opened the door to Bennett's testimony about whether she had ever seen him with a gun before.  Defense counsel apparently tried to limit his initial question on cross-examination to whether Bennett had seen Defendant with a gun at any other time on the night of the incident by asking:  "And besides seeing

6

[Defendant] sitting in that chair, you never saw [Defendant] at any other time with a gun that night, correct?" Before answering the question, Bennett asked for clarification: "Besides that night?" But instead of simply answering, "no," counsel's response was more confusing that his initial question. Indeed, counsel stated: "Just when he's sitting in the chair. Besides sitting in the chair, he wasn't walking around in your yard with a gun. Nothing like that, right?" When Bennett began to answer that she had previously seen Defendant with a gun, counsel promptly interrupted her.

The district court's determination that Defendant's ambiguous question opened the door to Bennett's testimony was not an abuse of discretion, regardless of whether Defendant intended to ask that question. *See West*, 898 F.2d at 1500. Although Defendant attempted to prevent Bennett from answering when he realized the testimony she was about to provide, the Government was entitled to clarify Bennett's answer on redirect examination because Defendant had already opened that door. *See Elliott*, 849 F.2d at 559; *see also United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1366 n.13 (11th Cir. 1994) (stating that the district court did not abuse its discretion by permitting the Government to clarify on redirect examination an area of testimony that the defendant had raised on cross-examination).

In any event, even if Defendant had not opened the door to this testimony, it would have been permissible under Rule 404(b), which provides that evidence of crimes, wrongs, or other acts is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with that character.  Fed. R. Evid. 404(b)(1).  However, this extrinsic evidence may be admissible for another purpose, such as to prove motive, intent, knowledge, absence of mistake, or lack of accident.  Fed. R. Evid. 404(b)(2).

Defendant asserts that the Government did not provide notice of Bennett's testimony as required under Rule 404(b).  Because Defendant did not object to Bennett's testimony based on the lack of notice, we review this argument for plain error.[1]  *United States v. Clark*, 274 F.3d 1325, 1326 (11th Cir. 2001) ("We review arguments raised for the first time on appeal for plain error.").  Nevertheless, the district court did not err, plainly or otherwise, by admitting this evidence without prior notice from the Government.  The rule states that the Government must provide notice on request by the defendant, but Defendant did not request notice of the evidence.  *See* Fed. R. Evid. 404(b)(2).  But even if Defendant had, the Government would not have been able to provide it because, as explained by the Government at trial, it only learned of this evidence at trial.  What's more is that

---

[1]  Under plain error review we will reverse where there is "(1) an error (2) that is plain and (3) that has affected the defendant's substantial rights; and . . . (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings."  *United States v. Madden*, 733 F.3d 1314, 1322 (11th Cir. 2013).

our focus with respect to this issue is on whether Defendant was prejudiced by the lack of notice, and Defendant has not explained how he was prejudiced.  *See United States v. Perez-Tosta*, 36 F.3d 1552, 1561 (11th Cir. 1994) ("[C]ourts have focused upon the prejudice suffered by defendant because of the lack of notice."). As such, Defendant has failed to show that the district court erred, much less plainly erred, by admitting this evidence without notice.

As to Defendant's argument that the testimony was not admissible under Rule 404(b), we disagree.  To be admissible under Rule 404(b):  "1) the evidence must be relevant to an issue other than the defendant's character; 2) sufficient evidence must be presented to allow a jury to find that the defendant committed the extrinsic act; and, 3) the probative value of the evidence must not be substantially outweighed by its undue prejudice."  *United States v. Sterling*, 738 F.3d 228, 238 (11th Cir. 2013).  The evidence that Defendant had previously possessed a gun was relevant to an issue other than Defendant's character, namely, this testimony established that Defendant knowingly possessed the firearm and did not have it by accident or mistake.  *Cf. United States v. Jernigan*, 341 F.3d 1273, 1281–82 (11th Cir. 2003) (concluding that the admission of evidence of defendant's previous convictions, which both involved possession of a firearm in an automobile, were permissible under Rule 404(b) because they bore on his knowledge of the crime, not his propensity to commit the crime).  Because Defendant did not admit or

9

stipulate to the fact that he knowingly possessed a firearm, his knowledge was an element that the Government was required to prove. *See* 18 U.S.C. § 922(g)(1).

Moreover, contrary to Defendant's contentions, Bennett's uncontested testimony that she had previously observed Defendant with a firearm at her house was sufficient for a jury to have potentially concluded by a preponderance of the evidence that Defendant possessed a firearm, especially given Bennett's testimony that Defendant had been to her house to get tattoos. *See United States v. Edouard*, 485 F.3d 1324, 1345 (11th Cir. 2007) (concluding that a jury could have found by a preponderance of the evidence that the defendant committed the extrinsic conduct based on uncontested testimony); *United States v. Shores*, 966 F.2d 1383, 1386–87 (11th Cir. 1992) (concluding that there was sufficient evidence for a reasonable jury to conclude that a defendant committed a prior act, despite the lack of detail and corroboration).

Finally, Bennett's testimony was more probative than prejudicial because the past act—possessing a firearm—was substantially similar to the charge here. "Whether the probative value of Rule 404(b) evidence outweighs its prejudicial effect depends upon the circumstances of the extrinsic offense." *Edouard*, 485 F.3d at 1345 (alteration and quotations omitted). Though recognizing that the evidence was prejudicial, the district court nevertheless implicitly found that it was more probative, and thus admissible under Rule 404(b). *See United States v.*

*Ramirez*, 426 F.3d 1344, 1354 (11th Cir. 2005) ("A similarity between the other act and a charged offense will make the other offense highly probative with regard to a defendant's intent in the charged offense.").

Because Defendant opened the door to the Government's follow-up question on redirect examination, and because Bennett's testimony was admissible under Rule 404(b), the district court did not abuse its discretion by admitting that testimony.

### B.    Crime of Violence

Defendant next challenges the district court's determination that his 2006 conviction for child neglect pursuant to Florida Statute § 827.03 was a crime of violence under U.S.S.G. § 2K2.1(a)(2).

We typically review the issue of whether a defendant's conviction qualifies as a crime of violence under the Sentencing Guidelines *de novo*. *United States v. Pantle*, 637 F.3d 1172, 1173 (11th Cir. 2011). However, because Defendant did not object to the designation of his child neglect conviction as a crime of violence before the district court, our review is limited to plain error. *See id.*

Section 2K2.1(a)(2) of the Sentencing Guidelines provides for a base offense level of 24 if the defendant committed the present offense subsequent to sustaining at least two felony convictions for either a crime of violence or a controlled

11

substance offense.  U.S.S.G. § 2K2.1(a)(2).  The Guidelines define the term crime

of violence as:

> any offense under federal or state law, punishable by imprisonment
> for a term exceeding one year, that—
>
> (1)    has as an element the use, attempted use, or threatened
>        use of physical force against the person of another, or
>
> (2)    is burglary of a dwelling, arson, or extortion, involves
>        use of explosives, or otherwise involves conduct that
>        presents a serious potential risk of physical injury to
>        another.

U.S.S.G. § 4B1.2(a).

Defendant argues that his 2006 Florida conviction for child neglect is not a

crime of violence.  Florida law provides that "[a] person who willfully or by

culpable negligence neglects a child and in so doing causes great bodily harm,

permanent disability, or permanent disfigurement to the child commits a felony of

the second degree."  Fla. Stat. § 827.03(2)(b).  Neglect of a child is defined as:

> 1.  A caregiver's failure or omission to provide a child with the care,
> supervision, and services necessary to maintain the child's physical
> and mental health, including, but not limited to, food, nutrition,
> clothing, shelter, supervision, medicine, and medical services that a
> prudent person would consider essential for the well-being of the
> child; or
>
> 2.  A caregiver's failure to make a reasonable effort to protect a child
> from abuse, neglect, or exploitation by another person.

Fla. Stat. § 827.03(1)(e).

12

To show plain error under Federal Rule of Criminal Procedure 52(b), a defendant must show (1) that he did not intentionally relinquish or abandon the error; (2) the error must be plain, meaning clear or obvious; and (3) the error must have affected the defendant's substantial rights, which ordinarily means he must show a reasonable probability that, but for the error the outcome of the proceeding would have been different. *Molina-Martinez v. United States,* 136 S. Ct. 1338, 1343 (2016). If all three of these showings have been made, the court of appeals may then exercise its discretion to correct the forfeited error if the latter also seriously affects the fairness, integrity, or public reputation of the proceedings. *Id.*

Defendant has not demonstrated plain error based on the above test. As to the second factor, we have held that where the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error absent precedent from the Supreme Court or this Court directly resolving the question. *See United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003). A determination that Defendant's conviction for child neglect constituted a crime of violence necessarily was based on a conclusion that this offense involved "conduct that presents a serious potential risk of physical injury to another," pursuant to U.S.S.G. § 4B1.2(a)(2). Although one can question whether a Florida conviction for child neglect meets the definition set out in the above Guidelines' provision, Defendant has not cited us to any Supreme Court or Circuit precedent so ruling.

13

But even assuming that the district court plainly erred in failing to *sua sponte* conclude that the PSR erroneously counted this conviction as a crime of violence, Defendant has failed to show that this error affected his substantial rights because he has failed to show a reasonable probability that, but for the error, the outcome of the proceeding would have been any different. It is true that the Supreme Court has recently held that when a district court has "mistakenly deemed applicable an incorrect, higher Guidelines range," *Molina-Martinez*, 136 S. Ct. at 1346, and when "the record is silent as to what the district court might have done had it considered the correct Guidelines range," "in most instances" this will "suffice to show an effect on the defendant's substantial rights." *Id*. at 1347. But where the record shows that the district court thought the sentence it chose was appropriate regardless of the Guidelines range, then a reasonable probability of prejudice will not be shown based on an incorrect calculation of the Guidelines. *Id*. at 1346–47.

Here, the district court made it clear that its sentencing decision was not based on the Guidelines range.[2] As discussed below, the court engaged in a long colloquy regarding its concerns about Defendant's fixation on guns and violence and the future danger that he posed, given his past conduct and his continuing

---

[2]  With two prior convictions for crimes of violence or controlled substance offenses, the Guideline range was 77-96 months, based on an offense level of 24 and a criminal history category IV.  If the child-neglect conviction had not been considered a crime of violence, the offense level would have been 20, for a range of 51-63 months.

14

fondness for firearms.  The court imposed an upward variance in reaching its sentence of 108 months.  The court made clear that the Guidelines were not the driver in its decision-making process.  Rather, the court stated that it had originally intended to impose a ten-year sentence, which was the statutory maximum, but had been sufficiently persuaded by defense counsel's advocacy to "go down one year" and impose a nine-year sentence instead.  In short, Defendant has shown no prejudice by any error occurring in the imposition of the 4-level enhancement based on the existence of two convictions for either a crime of violence or a controlled substance offense.

### C.    Substantive Reasonableness

Defendant's final argument is that his 108-month sentence is substantively unreasonable.  Defendant asserts that the district court unreasonably relied on his prior conviction for child neglect because the record showed that the injury the minor victim suffered was merely accidental.

Using a two-step process, we review the reasonableness of a district court's sentence for abuse of discretion.  *United States v. Cubero*, 754 F.3d 888, 892 (11th Cir. 2014).  We first look to whether the district court committed any procedural error, and then we examine whether the sentence is substantively reasonable in

light of the totality of the circumstances and the 18 U.S.C. § 3553(a) factors.[3]  *Id.*

The party challenging the sentence bears the burden of showing that it is

unreasonable.  *United States v. Pugh*, 515 F.3d 1179, 1189 (11th Cir. 2008).  We

will only vacate a defendant's sentence if we are "left with the definite and firm

conviction that the district court committed a clear error of judgment in weighing

the § 3553(a) factors by arriving at a sentence that lies outside the range of

reasonable sentences dictated by the facts of the case."  *United States v. Irey*, 612

F.3d 1160, 1190 (11th Cir. 2010) (quotation omitted).

Here, Defendant has not shown that his sentence is substantively

unreasonable.  The record reflects that the § 3553(a) factors support the upward

variance in this case.  The district court primarily focused on one factor in

imposing Defendant's sentence:  the need to protect the public from future injury

caused by Defendant.  As noted by the district court, Defendant had an apparent

obsession with guns, as evidenced by his gun-related tattoos, his prior conviction

involving a gun, and the present offense of being a felon-in-possession of a

firearm.  The district court was particularly troubled by Defendant's nine prior

---

[3]  The § 3553(a) factors include:  (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed education or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims.  18 U.S.C. § 3553(a).

convictions, but most notably his conviction for child neglect based on a child shooting himself with a gun that Defendant left near the child.  Moreover, the present offense similarly involved reckless conduct related to a firearm, as illustrated by Defendant's firing of a gun several times outside of a home with people inside.  In short, Defendant has failed to show that the district court abused its discretion by imposing a 108-month sentence.

For the above reasons, Defendant's conviction and sentence are

**AFFIRMED.**